UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRET HEALY and<br>HEALY RANCH PARTNERSHIP,<br><br>Plaintiffs,<br><br>v.<br><br>SUPREME COURT OF SOUTH DAKOTA,<br>HEALY RANCH INC., MARY ANN OSBORNE,<br>BARRY HEALY, BRYCE HEALY,<br>ALBERT STEVEN FOX, LARRY MINES, and<br>SHEILA MINES,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 4:23-cv-4118<br><br><br><br>COMPLAINT |

COMES NOW, the above-named Plaintiffs, Bret Healy and Healy Ranch Partnership, by and through the undersigned counsel who files this Complaint as follows:

**PARTIES**

1.  Plaintiff Bret Healy (Bret) is a natural person who is a resident of Brule County, South Dakota, and a partner in Healy Ranch Partnership.

2.  Plaintiff Healy Ranch Partnership (HRP) is an organization established for purposes of conducting a farming and ranching operation located in rural Brule County, South Dakota. HRP was organized in 1961. HRP's employer identification number (EIN) is 46-XXXXXXX. The original equal partners were Emmett Healy (plaintiff's grandfather) and Robert E. Healy (plaintiff's father). Emmett Healy passed on August 23, 1969. DeLonde Healy (Emmett Healy's wife and plaintiff's grandmother) inherited Emmett's 50% interest in HRP per the final decree of distribution of Emmett Healy's estate on December 22, 1971. DeLonde chose to remain a partner in HRP per the terms of Emmett Healy's will. Thereafter, Robert E. Healy and DeLonde Healy were equal partners in HRP. Robert E. Healy passed on November 11, 1985. Mary Ann Osborne, formerly known as Mary Ann Healy, inherited Robert E. Healy's 50% interest in HRP per operation of law. Pursuant to a duly executed Partnership Agreement dated January 25, 1986, plaintiff acquired DeLonde Healy's 50% interest in HRP. Per an agreement between Osborne and

Bret on or about January 1, 1992, Bret, Bryce and Barry purchased Osborne's 50% interest in HRP on an equal basis.

3. Defendant Supreme Court of South Dakota (Supreme Court) is the highest court of the state, established under Article V § 2 of the South Dakota Constitution.

4. Defendant Healy Ranch, Inc. (HRI) is a corporation organized and existing under the laws of the State of South Dakota.

5. Defendant Mary Ann Osborne (Osborne) is a natural person residing at 13498 Minnehaha Road, Wilmot, South Dakota 57279.

6. Defendant Barry Healy (Barry) is a natural person residing at 24839 348th Avenue, Pukwana, South Dakota 57370.

7. Defendant Bryce Healy (Bryce) is a natural person residing at 3108 West Cinnamon Street, Sioux Falls, South Dakota 57108.

8. Defendant Albert Steven Fox (Fox) is a natural person and an attorney with a principal place of business located at 131 South Main Street, P.O. Box 131, Chamberlain, South Dakota 57325.   He is a resident of South Dakota.

9. Defendant Larry Mines is a natural person residing at 23730 350th Street, Pukwana, South Dakota 57370.

10. Defendant Sheila Mines is a natural person residing at 23730 350th Street, Pukwana, South Dakota 57370.

## JURISDICTION AND VENUE

11. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action asserts claims arising under the Constitution and laws of the United States; and pursuant to 28 U.S.C. § 1367 because the pendent state law claims for fraud, misrepresentation, and other misconduct and for fraud upon the court, are so related to the claims in original jurisdiction that they form part of the same case or controversy.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all individual Defendants reside in South Dakota, all the entity Defendants are organized and existing under the laws of South Dakota, and at least one Defendant resides in this District.

## FACTS

*Healy Ranch Partnership*

13. Located in rural Brule County, South Dakota, portions of Healy Ranch real property have been owned and/or occupied by the Healy family since 1897.

14. Bret, Barry, and Bryce's grandfather, Emmett Healy, farmed the land with his wife, DeLonde, starting with their marriage on June 10, 1936, until his death on August 23, 1969.

15. Healy Ranch Partnership was organized in 1961 as a partnership equally divided between Emmett Healy and Robert Healy, Bret, Barry, and Bryce's father.

16. From 1961 until November 21, 1968, HRP owned no real property.

17. On November 21, 1968, Emmett and DeLonde executed the Healy Deed, deeding approximately 1209 acres to HRP.

18. The Healy Deed was filed for the record on July 28, 1969, just prior to Emmett's death from cancer.

19. Robert E. Healy was the executor of Emmett Healy's estate.

20. In 1985, Robert died in a tractor accident, leaving his 50% interest in HRP to Osborne.

21. Following Robert's death, on January 25, 1986, Bret, DeLonde, and Osborne executed a partnership agreement transferring DeLonde's 50% ownership interest in HRP to Bret.

22. Attorney Albert Steven Fox drafted the 1986 Partnership Agreement and notarized the signatures of Bret, DeLonde, and Osborne affixed on the document.

23. On January 25, 1986, Bret, DeLonde, and Osborne also executed a right of first refusal (FROR).  The FROR granted DeLonde the right of first refusal on the Northwest Quarter, the Northeast Quarter and the Southeast Quarter of Section Twenty-Nine 29, Township One Hundred Four North, Range Seventy, West of the Fifth P.M., Brule County, South Dakota.

24. Attorney Albert Steven Fox drafted the 1986 FROR and notarized the signatures of Bret, DeLonde, and Osborne affixed on the document.

25. On December 22, 1986, HRP filed for bankruptcy protection under Chapter 12.[1]

26. Attorney Albert Steven Fox was the attorney of record for HRP's Chapter 12 bankruptcy.

27. On April 6, 1987, Osborne filed for bankruptcy protection under Chapter 12.

28. Attorney Albert Steven Fox was the attorney of record for Osborne's Chapter 12 bankruptcy.

---

[1] Bankruptcy Petition # 86-30132.

29. In May, 1987, HRP's note and mortgage with the Federal Land Bank of Omaha was modified in a stipulation of settlement in the Chapter 12 proceedings.

30. On July 29, 1987, DeLonde executed her Last Will and Testament.

31. Attorney Fox drafted DeLonde's will and notarized DeLonde's signature and the signatures of the two witnesses, Marcella Jensen and Janice Frederickson.

32. Marcella Jensen was Attorney Fox's personal assistant at the time she (Marcella) witnessed DeLonde's signature on said will.

33. DeLonde, in section III of her will, stated "I leave nothing to my deceased son, Robert E. Healy, or his family, I having settled with them concerning my interest in the farm and all other such property prior to this time."

34. On August 25, 1987, HRP's and Osborne's bankruptcy petitions were consolidated.

35. On January 31, 1989, DeLonde executed three written instruments: 1) a bill of sale transferring all of DeLonde's interest in the personal property of HRP to Bret; 2) a warranty deed transferring her entire interest in all the Healy Ranch real property to Bret; and 3) a warranty deed transferring the HRP parcel of real property platted as RH-1 in Section Twenty-Three, Township One Hundred Four North, Range Seventy, West of the Fifth P.M., Brule County, South Dakota to Bret.

36. The January 31, 1989, bill of sale in favor of Bret covered all of DeLonde's interest in the machinery, crops, cattle, equipment and "any and all other Healy Farm operation or Healy Farm partnership or Healy Ranch partnership of any other like entity whether a partnership, corporation or other legal entity."

37. Bret first saw the January 31, 1989, instruments after April 21, 2017, when he was provided said documents by Mary Williams, DeLonde's youngest daughter and executor of DeLonde's estate, who had said documents in her possession.

38. Attorney Albert Steven Fox drafted the 1989 instruments and notarized the signatures of DeLonde affixed on the documents.

39. Attorney Albert Steven Fox, in his answer to Bret's complaint in 07CIV 17-23, admitted that he failed to file for the record said warranty deed transferring DeLonde's entire interest in all the Healy Ranch real property to Bret.

40. Attorney Albert Steven Fox, in his answer to Bret's complaint in 07CIV 17-23, asserted that DeLonde had no personal interest in real property on January 31, 1989.

41. On March 21, 1990, a contract for sale for a portion of the Kott Deed that had been platted as RH-1 in October, 1974, was executed between Ronald and Velma Scott (sellers) and Raymond and Evelyn Sharping (buyers) for $28,500.

4

42. The March 21, 1990, contract, recorded on April 3, 1990, detailed a provision that escrowed $18,500 of the purchase price to pay off the contract for deed between the Sellers (Ronald and Velma Scott) and the parties from whom they were purchasing the property.

43. Ronald and Velma Scott were purchasing RH-1 from HRP as per a contract for deed first recorded in early October, 1974. In October, 1974, Bret had just turned 10 years old.

44. Fox's law firm, Larson, Sundall, Larson, Schaub and Fox, drafted the March 21, 1990, contract.

45. The $18,500 noted in the March 21, 1990, contract was never disclosed to the Chapter 12 Bankruptcy Court as required under HRP and Osborne's approved bankruptcy plan.

46. Neither Fox nor Osborne disclosed the receipt of the $18,500 for RH-1 to Bret.

47. Neither Fox nor Osborne disclosed to Bret that HRP owned RH-1 at any time.

48. On March 23, 1990, Chapter 12 Trustee Lovald wrote to Bret, cc'd to Osborne, stating that he would disallow Osborne from keeping more than the statutory maximum $30,000 from the sale proceeds of Osborne's Chamberlain, South Dakota residence that Osborne had listed for sale asking a $62,000 sale price.

49. On March 26, 1990, Chapter 12 Trustee Lovald noticed a hearing scheduled on May 8, 1990, to declare excess proceeds from sale of personal residence as excess disposable income available to unsecured creditors of the estates.

50. At the May 8, 1990, hearing, Fox represented Osborne.

51. As a result of the May 8, 1990, hearing, Osborne would have to list her residence through January 15, 1991, and for 120 days after (May 15, 1991), any sale would still be subject to authority of Trustee Lovald.

52. As of May 15, 1991, Osborne was free to sell her Chamberlain residence and keep all proceeds, which she in fact did.

53. On November 8, 1991, HRP was discharged from Chapter 12 bankruptcy.

54. On April 19, 1993, Attorney Albert Steven Fox wrote to Osborne regarding the January 25, 1986, partnership agreement, the January 31, 1989, warranty deed purportedly transferring all of DeLonde's interest in HRP's real property to Bret, and the January 31, 1989, bill of sale from DeLonde to Bret, adding *"I hope this helps you with the Federal Land Bank."* Fox also noted*, "Also the bankruptcy papers were not finished. I believe the recent notice I received from the Trustee should wrap up even those last details on the bankruptcy.*

55. The April 19, 1993, memorandum from Attorney Fox to Osborne enclosed the three documents reference in the memorandum.

56. On April 28, 1993, DeLonde executes an oath prepared and notarized by Fox and provided to Farm Credit Services, formerly known as the Federal Land Bank of Omaha, in which she affirms: *"I, DeLonde Healy, hereby state on my oath that I have no interest in any of the real property or other property owned by the Healy Ranch, nor do I believe any of the obligations of the ranch should be attributed to me. After my son, Robert Healy passed away, and during the bankruptcy proceedings, I released all of my interest in the property, both real and personal, of the Healy Ranch."*

57. Also on April 28, 1993, Osborne and DeLonde sign a loan servicing application to Farm Credit Services that stated in handwriting, detailing the loan servicing request, *"Release of DeLonde from the note as she is elderly, out of the partnership, and adds insignifigant repayment."*

58. On May 12, 1993, HRP and Osborne's consolidated Chapter 12 bankruptcy petition was closed.

59. On May 18, 1993, in a memorandum to HRP and Osborne which was cc'd to Bret, Farm Credit Services approved the loan servicing application and provides a copy of a memorandum from Farm Credit Services to Fox dated the same day. The memorandum to Fox on behalf of his client, DeLonde, enclosed the release of personal liability for DeLonde for the 1981 Federal Land Bank of Omaha mortgage of the portion of Healy Ranch described in the Healy Deed, approximately 1209 acres.

60. On or about January 1, 1992, an agreement was reached between Osborne and Bret, where Bret, Bryce, and Barry would purchase Osborne's ownership interest in HRP for $100,000 on an equal basis, with interest accruing at 7% per annum, with any and all payments deferred under the agreement until the final payment was made on the Federal Land Bank mortgage which was estimated to occur around 2000 or 2002.

61. Accordingly, Bret, Bryce, and Barry, as per the Agreement, did not pay the $100,000 in 1992, and instead, Osborne set up Healy Ranch, Inc. (HRI) and claims to have transferred all stock and ownership interest in HRI to Bret, Bryce and Barry.

62. Osborne was eventually completely paid the $100,000 that related to the 1992 agreement by HRI, from November 1, 1999, to June 20, 2014, with interest.

63. Osborne was paid $62,000 in interest on the original $100,000, accrued from January 1, 1992, to November 1, 1999, which was paid from November 1, 1999, to June 20, 2014.

64. On March 12, 1995, a warranty deed was executed by Osborne and DeLonde, purporting to transfer Healy Ranch real property from the partnership to HRI.

65. On March 13, 1995, the warranty deed was filed with the Register of Deeds in Brule County.

66. The warranty deed included language that the transfer of the Healy Ranch real property was exempt from the transfer fee because the grantor was the owner of the majority of the capital stock in the corporation and because no consideration was given. See SDCL 43-4-22(11) & (18) (providing exemptions from real estate transfer fee for any transfer of title "[b]etween an individual grantor, or grantors, and a corporation, where the grantor or grantors and the owner of the majority of the capital stock of the corporation are the same person" and for any transfer of title "[f]or which no consideration was given").

67. When examined during his deposition on May 20, 2022, regarding documentation for the step-up in basis for the real property purportedly transferred from HRP to HRI, required by the IRS for related party transactions, Bryce responded that there are two partnerships.

68. Bryce described a 1972 partnership between his "father and mother [(Osborne)], grandfather and grandmother [(DeLonde)]."

69. No valid documentation of a separate 1972 partnership exists.

70. In *Healy II*, HRI does not claim as its root of title the wild 1972 deed. Conversely, the Supreme Court noted in *Healy I*, at ¶4, *"While the parties never signed the partnership agreement, they executed and recorded a deed transferring Healy Ranch into the partnership,"* ignoring the break in the chain of title evident from Bret's complaint and the exhibits attached to Bret's complaint.

71. Bryce also acknowledged the 1986 partnership agreement signed by Bret, Osborne, and DeLonde.

72. Bryce further acknowledged that the partners in the partnership upon execution of the 1986 partnership agreement were Osborne and Bret.

73. When asked which partnership transferred Healy Ranch to HRI, Bryce responded he was "unaware."

*HRI Stock*

74. HRI's stock certification, employer identification application, and Articles of Incorporation report the corporation's date of business commencement as August 1, 1994.

75. On August 1, 1994, Osborne was issued HRI stock certificate no. 1 for 299,348 shares.

76. On December 31, 1994, Osborne executed her signature on HRI's application for a Family Farm Waiver, including a representation that Bret, Bryce, and Barry were already HRI stockholders.

77. On January 2, 1995, Osborne held the organizational HRI Stockholder and first Board of Directors meetings, declaring that she was the sole stockholder.

78. In Osborne's, HRI's, Bryce's and Barry's answers to Bret's complaint in 07CIV 17-23, they all declare that Bret, Bryce, and Barry were not HRI stockholders on January 9, 1995.

79. On January 31, 1995, Form 2553, signed by Osborne, was filed by Fox to request S Corporation status for HRI, listing Osborne as the sole shareholder.

80. The IRS requires that Form 2553 carry the signatures of all stockholders in order to elect S corporation status.

81. No contributions or exchanges were made for any HRI shares in 1994.

82. HRI's beginning balance sheet on January 1, 1995 (Schedule L of HRI's Form 1120S) shows a beginning balance of $0 assets and liabilities.

83. HRI's tax returns from 1995-2021 include capital stock of $194,520.

84. HRI's 1995 Form 1120S, Schedule L, line 12, lists real estate valued at $299,348.

85. HRI's capital stock originates entirely from the real estate valued at $299,348 on its 1995 tax returns.

86. For tax years 1995 through 1999, HRI Forms 1120 S lists four stockholders, Osborne, Bret, Barry, and Bryce.

87. According to the stock certificate record of HRI produced by Barry to Bret in the fall of 2021, the three brothers do not have any stock issued to them until January 2, 1996.

88. HRI's Annual Report to the South Dakota Secretary of State for 1995 through 2007 claims the HRI shares issued as 299,348. After 2007, the form for the annual report no longer required the number of outstanding shares to be listed.

89. At the HRI corporate meetings of February 5, 2018, Bret challenged Barry and Bryce for their proof of capital stock.

90. At the HRI corporate meetings of January 20, 2021, Bret again challenged Barry and Bryce for their proof of capital stock and presented evidence, which was entered into the corporate record, that HRP owns 100% of the capital stock in HRI.

91. The HRI Form 1120S K1s, delivered to Bret, Barry, and Bryce for 2020 and 2021, report a sum of 299,348 issued HRI shares, with Bret holding 99,782 shares, Barry holding 99,783 shares, and Bryce holding 99,783 shares.

92. The HRI shareholder list, fourth version, prepared by Barry for the 2023 HRI annual meetings of the stockholders and board of directors, states that the stock holdings for March 11, 1995, were as follows:  Bret holding 24,936 shares, Barry holding 24,936 shares, and Bryce holding 24,936 shares.

93. The said shareholder list further states that, pursuant to a February 11, 2000, contract for deed, each stockholder received additional shares as follows:  Bret received 74,846 additional shares, Barry received 74,846 additional shares, and Bryce received 74,846 additional shares, totaling 224,538 shares acquired via the February 11, 2000 contract. And that there are a total of 299, 346 HRI shares with Bret, Barry, and Bryce holding 99,782 shares, each.

94. However, the February 11, 2000, contract, entitled contract for deed, listed only 162,000 shares of HRI stock as the property conveyed by the contract from Osborne to her three sons, a difference of 62,538 shares less than listed on the January 23, 2023 shareholder list allegedly sold via the contract.

95. In her brief to the South Dakota Supreme Court in *Healy v. Osborne,* 2019 S.D. 56, 934 N.W.2d 557, Osborne stated, "As of February 11, 2000, Mary had sold all 162,000 shares to her sons …"

96. In their joint brief to the Eighth Circuit Court of Appeals in *Bret Healy v. Albert Fox, et al.*, 46 F.4th 739, Osborne and Bryce state three times that Osborne sold all her 162,000 shares in the February 11, 2000 contract.

*Healy Ranch real property*

97. On June 5, 1995, "Healy Ranch" is listed as the grantor on a Right of Way Easement which was granted to Aurora-Brule Rural Water System, Inc., and which was executed by Bryce who represented himself as the secretary/treasurer of Healy Ranch.

98. In his deposition taken March 6, 2020, Bryce admitted that Healy Ranch, the grantor identified on the Right of Way Easement, is not a corporation.

99. In 1999, Bret signed for a mortgage on Healy Ranch, acknowledging himself president of HRI – although there is no evidence in the records of the cases referenced herein that Bret read the 1999 or subsequent mortgages and he never admitted that he read them.

100.     On November 5, 2003, Bryce executed a lease agreement as secretary of HRI, leasing Healy Ranch to James R. and David Swanson for a term ending December 31, 2008.

101.     The Swansons had been leasing Healy Ranch real property since 1995.

102.     The said lease agreement was terminated by way of an agreement executed in January of 2008.

103.     That agreement, to terminate the Swanson's lease on Healy Ranch, listed the "Owners" of the Ranch as "Healy Ranch, a partnership" and Bret, Barry, and Bryce.

104.     The said agreement was signed by Bret, as general partner of Healy Ranch and partner, and by Barry and Bryce, as partners.

105.     In 2016, Bret, Barry, and Bryce discussed the possibility of selling Healy Ranch.

106.     As memorialized in HRI's special meeting minutes dated October 27, 2016, an agreement was reached whereby the Healy Ranch real property would be listed for auction, and if a minimum auction price of $5 million were not achieved, there would not be another sale of Healy Ranch for at least seven years.

107.     When Bret met with an attorney to advise him regarding his interests in Healy Ranch on April 3, 2017, he learned for the first time of the 1995 warranty deed purporting to transfer Healy Ranch real property to HRI.

108.     The auction for Healy Ranch took place on April 5, 2017, pursuant to the terms memorialized in the HRI special meeting minutes of October 27, 2016, and the highest bid at auction fell well short of the $5 million minimum.

109.     Upon further investigation of record title to Healy Ranch, Bret made a demand under HRI's by-laws for all secretarial and treasurer records on May 3, 2017.

110.     Bret discovered that HRI's corporate record consisted of false corporate resolutions, false title information, and sixteen forgeries of Bret's signature on corporate minutes.

*Healy I*

111.     Bret filed a lawsuit in state court on May 11, 2017 (*Healy I*),[2] alleging various causes of action against HRI, HRP, Osborne, Barry, Bryce, and Fox, and requesting punitive and compensatory damages.

112.     The parties litigated a motion made by Bret for a temporary restraining order, which resulted in a stipulation at hearing held July 5, 2017.

113.     The circuit court adopted the stipulation in an order following the hearing, ordering that "Healy Ranch, Inc., will not sell any corporate assets without unanimous shareholder consent, or further order of the court."

---

[2] *Bret Healy v. Mary Ann Osborne, Healy Ranch, Inc., Healy Ranch Partnership, Barry Healy, Bryce Healy, Albert Steven Fox,* 07CIV.17-23.  *Healy v. Osborne*, 2019 S.D. 56, 934 N.W.2d 557.

114.      While the *Healy I* litigation was in discovery, Bret sent a total of 2,304 discovery requests which produced, largely, incomplete, and inconsistent responses from the defendants.

115.      Bryce, Barry and HRI destroyed records and documents while the litigation was pending, at least three years' worth, and played games with discovery as documented by the correspondence between their counsel and Bret's counsel.

116.      Bryce filed answers to Bret's first set of requests for admissions wherein Bryce admits to listing himself as president of HRI in reports he filed with the South Dakota Secretary of State in 2012 and 2013.

117.      A review of HRI's Forms 1120S filed with the Internal Revenue Service by Bryce reveals that he listed himself as President of HRI for tax years 2010 and 2011.

118.      Bryce filed every Form 1120S for HRI with the IRS for tax years 1995-2021.

119.      Fox produced, as genuine on August 24, 2017, HRI's corporate book which included sixteen forgeries of Bret's signature.

120.      Bret was questioned by counsel for all defendants at his July 31, 2017, deposition, whether his signature was forged. Bret testified that the sixteen documents all contained a forged signature.

121.      Barry's signature appeared on 35 waivers of notice for HRI annual stockholder and board of directors meetings and for a special meeting purportedly held in 2007, all produced by Fox on August 24, 2017, that did not exist prior.

122.      Barry testified on March 6, 2020, that Attorney Fox had asked him to sign, via an April 11, 2017, email, the waivers of notice for HRI annual stockholders' and board of directors' meetings and for a special meeting purportedly held in 2007, that did not previously contain Barry's signature.

123.      Fox did not produce his email to Barry until June 5, 2023, producing the document through his attorney Emily Smoragiewicz in response to a September 7, 2022 request by plaintiff's counsel in 07CIV 22-12.

124.      Osborne, on August 3, 2017, produced a memorandum from her accountant dated July 9, 1999, stating that Osborne was retaining 28% of her HRI shares after execution of the February 2000 contract for deed whereby Bret, Barry, and Bryce purchased 162,000 shares in HRI.

125.      In their respective statements of undisputed material facts on summary judgment in *Healy I*, HRI, Osborne, Fox, Barry and Bryce claimed that Bret purchased a one-third interest in HRI in February of 2000.

126.      In a joint brief filed on October 25, 2017, in support of their motions for attorneys' fees, HRI, Osborne, Barry and Bryce stated in regard to February, 2000: "Bret, Bryce and Barry sign a contract to purchase 100% of the shares of Healy Ranch, Inc."

*Fake Email*

127.      With the litigation underway, on May 17, 2017, Barry forwarded to Bryce a chain of email communications between Bret and Barry from June 28, 2016, which included a communication from Bret purportedly stating: "I owned 25% of place - mom insisted on 1/3 to everyone - so yes I did put all my chips back in for 8% …."[3]

128.      On June 8, 2017, another document is produced purporting to show the email communications that occurred between Bret and Barry on June 28, 2016.[4]

129.      Again, on June 8, 2017, another document is produced purporting to show the said email communications.[5]

130.      On June 14, 2017, a fourth production is made of the email communications.[6]

131.      On July 5, 2017, at a temporary restraining order hearing in *Healy I*, counsel for HRI, Barry and Bryce, Lee Schoenbeck, offered into evidence an altered production of the communications between Bret and Barry from June 28, 2016.

132.      The offered evidence was a single page, altered email production of five messages.

133.      An accurate compilation of the email string between Bret and Barry on June 28, 2016, includes 20 email communications between the two.

134.      The email production offered at hearing on July 5, 2017, excludes 15 email communications (the first 13 emails and emails 16 and 17) from the actual chain of emails that were exchanged between Bret and Barry on June 28, 2016.

135.      The email evidence, offered as genuine to the circuit court in *Healy I*, was an altered, truncated, and misleading document.

---

[3] This document was produced through discovery in the *Healy I* litigation as DEF 0327.

[4] This document set was produced in *Healy I* as DEF 000005-06.

[5] This document set was produced in *Healy I* as DEF 000007-09.

[6] This document was produced in *Healy I* as DEF 0260.

136.     All the defendants moved for summary judgment in *Healy I*, however, none of the defendants included the altered email evidence in their statements of undisputed material facts.

137.     In his decision granting the defendants' motions for summary judgment in *Healy I*, Judge Giles did not include any reference to the altered email evidence.

138.     In his Findings of Fact and Conclusions of Law on the decision to grant attorneys' fees to the defendants in *Healy I*, Judge Giles did not include any reference to the altered email evidence.

139.     The altered email production that was offered into evidence on July 5, 2017, in *Healy I*, *does not* identify Bret as the author of the following language: "I owned 25% of place - mom insisted on 1/3 to everyone - so yes I did put all my chips back in for 8% - you certainly did not things together back in late 80's."

140.     HRI's counsel examined Bret on the document at hearing on July 5, 2017, in *Healy I*.

141.     Under examination from HRI's counsel, Bret challenged the context of the communication as sarcasm and maintained, "I did not transfer my interest in Healy Ranch Partnership, not ever."

142.     At his deposition on July 31, 2017, Bret described the altered email evidence as sarcasm five times and as not true four times.

*Fake Subpoena*

143.     In a brief filed by Osborne's counsel, Jack Hieb, in *Healy I*, on October 25, 2017, which was joined by HRI, Barry, Bryce and HRI's counsel, Lee Schoenbeck, Mr. Hieb references a two-page financial statement that he had attached to his supporting affidavit that was filed with the court.

144.     The two-page financial statement was a confidential document that had been filled out by Bret for a bank in 2001.[7]

145.     Mr. Hieb claimed in the brief that the two-page financial statement was obtained by a subpoena in discovery.

146.     However, Mr. Hieb never identified the purported subpoena for the confidential financial statement.

147.     In fact, Mr. Hieb did not obtain the confidential financial statement via subpoena despite representing to the circuit court in *Healy I* that he had.

---

[7] The two-page statement was produced by HRI at DEF 003-004.

148.     When examined on his confidential financial statement at his deposition on July 31, 2017, Bret testified that he was not disclosing all his assets and further, Bret challenged the provenance of the two-page financial statement and the process by which it had been secured.

*Healy I Decision*

149.     On October 10, 2017, the state circuit court issued a memorandum decision granting the defendants summary judgment on all of Bret's claims, holding them time barred by the applicable statutes of limitations.

150.     Following the circuit court's decisions, the defendants moved for attorney fees.

151.     The circuit court granted defendants' motions for attorney fees, ordering Bret to pay attorney fees, sales tax and costs in the total amount of $83,295.42.

152.     On November 28, 2017, Barry sent an email to DeLonde's children and others in which he attaches the circuit court's order from the temporary restraining order hearing and decision to grant fees, and states: "I can also provide the smoking gun that completely dismantles Brets claims.  It is he himself admitting to giving up that 25% 1986 Partnership Agreement."

153.     Bret filed his Notice of Appeal to the Supreme Court on December 27, 2017.

154.     On May 21, 2018, Bret's then counsel, Cynthia Srstka, contacted all counsel for defendants, prior to their deadline for filing appellee briefs in June 2018, regarding the July 9, 1999, memorandum from Osborne's accountant, which stated that Osborne intended to retain HRI shares after execution of the 2000 contract for deed, reminding counsel of their duties under Rule 3.3.

155.     Attorney Jack Hieb stated, in response, "It could best be explained by actually reading the letter, From your use of the word "we" it appears that more than one of you failed to do so before you sent your passive aggressive email."

156.     Attorney Lee Schoenbeck suggested, in response, that Bret Healy may have a claim against his counsel for failing to read discovery.

157.     All the *Healy I* defendants argued in their briefing to the Supreme Court that Osborne sold her entire interest in HRI pursuant to the contract for deed executed February 11, 2000.

158.     On September 25, 2019, the Supreme Court filed its *Healy I* opinion.

159.     The Supreme Court conducted fact finding and weighed evidence.

160.     At paragraph seven, the Supreme Court states that "Bret served as president of Healy Ranch, Inc. for approximately seventeen years, beginning in 1999."

161.     In the next sentence the Supreme Court states that "In 2000, Bret, Bryce, and Barry each purchased a one-third interest in Healy Ranch, Inc. from [Osborne] pursuant to a contract for deed."

162.     In paragraph eight, the Supreme Court notes a 2013 lawsuit Bret commenced on behalf of HRI in which two of Bret's discovery answers indicated the land and fences involved in the lawsuit belonged to HRI.

163.     Also in paragraph eight, the Supreme Court notes that Bret did not name the partnership as a party, ignoring that Bret named himself and HRI, who he knew to be the two partners in HRP, as the plaintiffs.

164.     The documents regarding the 2013 lawsuit were not timely filed by defendants in the circuit court proceedings, and Bret's counsel argued robustly that the two discovery answers were typographical errors.

165.     Further, the documents including the two discovery answers specifically reserved the right to amend the answers – all from a 2013 lawsuit that never even made it to a hearing prior to settling outside of court.

166.     In the decisional portion of its opinion the Supreme Court reviewed the circuit court's decisions to grant summary judgment and award attorney fees.

167.     In paragraphs 20 and 21 of its *Healy I* decision, the Supreme Court notes that Bret raised an issue over ownership of Healy Ranch, which the circuit court did not resolve and which the Supreme Court specifically declines to address: "We decline to address Bret's claim of ownership because the threshold issue in this case centers on the timeliness of Bret's claims for conversion, breach of contract, fraud, conspiracy to commit fraud, unjust enrichment, breach of fiduciary duties, and negligence."

168.     With respect to the circuit court's decision to grant summary judgment based on the applicable statutes of limitations, the Supreme Court affirmed because it was undisputed that Bret commenced his lawsuit in May of 2017 and that May of 2017 was more than twenty-two years after execution of the 1995 warranty deed conveying the ranch property to HRI.

169.     In that regard, the Supreme Court determined that Bret had either actual or constructive notice of the 1995 warranty deed by, at the latest, 1999 when Bret, as president of HRI, signed a mortgage with Marquette Bank, representing that the corporation had "good and marketable title of record" to Healy Ranch.

170.     The Supreme Court went on to reason that Bret "purchased, along with his two brothers, a one-third interest in the corporation in 2000 by contract for deed."

171.     The Supreme Court used the confidential financial statement to find that "Bret represented that his shares of Healy Ranch, Inc. were his only asset."

172.     In addition, the Supreme Court notes the 2013 lawsuit discussed above and falsely states that Bret "brought a civil action in the *sole name of the corporation* against a third party seeking to recover *damage to ranch fencing ...*" (emphasis added).

173.     The civil suit in question, 07CIV 13-66, named as plaintiffs the two partners of HRP, Bret and HRI, sought to recover for grazing losses, loss of soil fertility, destroyed hay, lesser crop production in the year following the fire, all damages caused by defendant Larry Mines.

174.     Finally, the Supreme Court quotes the altered email as "telling" on the issue of whether Bret had notice of the 1995 warranty deed, and further states, at paragraph 37, "Bret's e-mail to Barry in June 2016 demonstrates that he had actual knowledge that Healy Ranch, Inc. held title to Healy Ranch."

175.     The Supreme Court utilized the fake email to nullify Bret's on the record dispute of when he discovered the 1995 warranty deed.

176.     With respect to the circuit court's decision to award attorney fees, the Supreme Court affirmed, again referencing the altered email as evidence that Bret had actual knowledge that Healy Ranch, Inc. held title to Healy Ranch, and concluding that Bret filed suit for the purpose of preventing a sale of Healy Ranch.

177.     In addition, the Supreme Court awarded appellate attorney fees in a total amount of $18,450.

178.     Notably, neither trial court nor the Supreme Court analyzed the fiduciary relationship between all the defendants and Bret.

*Healy II*

179.     On January 25, 2018, during the pendency of appeal in *Healy I*, Bret prepared and recorded a notice of claim of interest pursuant to SDCL 43-30-5, asserting that HRP held an interest in Healy Ranch and that the 1995 warranty deed executed by Osborne and DeLonde was not valid.

180.     Following the issuance of the Supreme Court's decision in *Healy I*, HRI filed suit in state court against Bret and HRP on November 26, 2019,[8] seeking to establish marketable title to the ranch in HRI based on the 1995 warranty deed executed by Osborne and DeLonde and to void Bret's notice of claim of interest.

---

[8] *Healy Ranch, Inc. v. Bret Healy, individually, and d/b/a Healy Ranch Partnership*, 07CIV.19-17. *Healy Ranch, Inc. v. Bret Healy*, 978 N.W.2d 786. ("*Healy II*").

181.     In a counterclaim, Bret asked to quiet title to the Healy Ranch in HRP, asserting that it owned the Ranch based on two deeds – one recorded in 1969 (Healy Deed) and another recorded in 1990 (Kott Deed).

182.     During discovery, HRI, Barry and Bryce did not produce all the records identified in their answers to Bret's interrogatories and requests for production.

183.     For their answer to Bret's interrogatory #6, HRI, Barry and Bryce identified paragraph 29 of the Supreme Court's decision in *Healy I* to claim there is no HRP currently in existence.

184.     Their reliance on paragraph 29 invokes both the fake subpoena and the fake email that did not identify Bret as the author, and they produced none of these documents in *Healy II.*

185.     Answering Bret's interrogatory #8 – e.g., requesting identification of facts and documents supporting HRI's claim that there were no partners in HRP on March 12, 1995 – HRI, Barry and Bryce state:  "Bret Healy left the Healy Ranch in 1989.  The Corporation was created in 1994, and our mother, Mary Ann Healy fka Mary Ann Osborne, said her sons were to each own one-third."

186.     HRI, Barry and Bryce failed to produce any evidence of what Osborne said her sons were each to own one-third of.

187.     Nevertheless, at a recent deposition Bryce verified that the February 11, 2000 contract was priced on the 1992 agreement noted above.

188.     Answering Bret's request for identification of facts and documents supporting their answer that no partnership exits, HRI, Barry and Bryce state: "There are no facts or documents to support the existence of Healy Ranch Partnership, and the Supreme Court Decision referenced above affirms that reality."

189.     They failed to produce the easement from HRP to Aurora-Brule Rural Water System, Inc., executed by Bryce and referenced above.

190.     They failed to produce the 2008 Swanson Settlement and Lease referenced above.

191.     They failed to produce the checking account statements of Bryce from accounts at both Wells Fargo and First Bank and Trust with the name of the partnership, Healy Ranch, listed on his checks.

192.     They also failed to produce the deposit images of HRI's Wells Fargo account with the name of the partnership, Healy Ranch, and Bryce Healy on them.

193.     Bret's interrogatory #13 requested identification of facts or proof showing a winding up or dissolution of HRP.

194.     HRI, Barry and Bryce answered: "Historically, there was more than one Healy Ranch Partnership.  No Healy Ranch Partnership has been in existence since 1985. Previously, Bret Healy testified that the final tax return for Healy Ranch Partnership was filed in 1985."

195.     They failed to produce any evidence of the existence of multiple partnerships or of the dissolution, winding up, and termination of HRP on December 31, 1985.

196.     Answering interrogatory #14, HRI, Barry and Bryce refer to a warranty deed with reference to the 1986 partnership agreement and assert that the Corporation assumed a $77,000 Federal Land Bank note and mortgage as consideration for the 1995 warranty deed.

197.     They failed to produce the warranty deed they claim the 1986 agreement referenced, failed to provide any documentation for their assertion that there was $77,000 in  consideration for the 1995 warranty deed, and no documentation supporting their assertion that HRI assumed the Federal Land Bank note and mortgage.

198.     HRI, Barry and Bryce failed to produce a single document in response to Bret's request #15 regarding all leases on the real estate described in their complaint, nor did they produce any of those documents in *Healy I*.

199.     They failed to produce a single document in response to interrogatory #16, regarding consideration exchanged for the March 12, 1995, warranty deed.

200.     Interrogatory #17 requested identification of the Directors, Officers, Shareholders of Healy Ranch, Inc. as of March 11, 1995, to which HRI, Barry and Bryce answered:

Directors:  Mary Ann Osborne, Bryce Healy, Barry Healy, Bret Healy.

Officers:  President, Mary Ann Osborne; Vice-President, Bret Healy; Secretary/Treasurer, Bryce Healy

201.     HRI's by-laws state that to be a director and/or executive officer, one must be a shareholder.

202.     Their answer to interrogator #17 directly conflicts with the positions they took in *Healy I* and in every subsequent litigation that Bret, Barry, and Bryce became shareholders after February 11, 2000, upon execution of the contract to purchase all 100% of Osborne's shares.

203.     HRI, Barry and Bryce's answer to interrogatory #18:

18. Please identify any changes of the Shareholders of Healy Ranch, Inc. at any point after March 11, 1995, the date of the change, the number of shares held, and the consideration exchanged for each Shareholder's shares.

ANSWER

As of March 11, 1995:
- Mary Ann Osborne 224,511
- Bryce Healy 24,946
- Bret Healy 24,946
- Barry Healy 24,945

As of February 11, 2000, pursuant to the Contract for Deed:
- Mary Ann Osborne 0
- Barry Healy 99,762.66
- Bryce Healy 99,762.67
- Bret Healy 99,762.67

President, Bret Healy, failed to act administratively to officially transfer shares after final payment was made in 2014.  We are currently working on officially transferring these shares out of escrow.

204.     They rely on fantasy arithmetic and produce not a single document that can provide a basis for their answer which contradicts the position they took in *Healy I* and every subsequent litigation.

205.     Following discovery, the circuit court granted HRI summary judgment and voided the notice of claim, concluding that it was time barred under SDCL 43-30-3.

206.     On appeal before the Supreme Court, Bret sought review of the circuit court's decision to grant HRI summary judgment based on its determination that the notice of claim was not timely filed.

207.     The Supreme Court concluded that Bret did in fact timely record the notice of claim.

208.     Nevertheless, the Supreme Court went on to consider Bret and HRP's quiet title counterclaim and applied claim preclusion *sua sponte*, to affirm the circuit court's decision to void the notice of claim.  The Supreme Court noted that it can be appropriate to apply claim preclusion sua sponte in "special circumstances," although it did not define nor otherwise identify what, if any, special circumstances existed.

209.     The Supreme Court conducted fact finding and weighed evidence.

210.     The Supreme Court denied Bret and HRP an opportunity to respond.

211.     The Supreme Court denied Bret and HRP the opportunity to be heard regarding ownership of Healy Ranch real property.

212.     Nothing in the South Dakota Marketable Title Act, found at SDCL 43-30, contemplates the voiding or removal of a Notice of Claim of Interest from the property records.

213.     There is no provision in the South Dakota Code that allows for the removal of a recorded instrument from the title record.

*HRP v. Mines*[9]

214.     On February 28, 2021, HRP filed a complaint to quiet title to an approximately 46-acre tract of property within Healy Ranch, commonly known as Lot RH-2, or simply RH-2.

215.     RH-2 was originally part of larger tract of land known by the Healy family as the Munger Place, that was conveyed to HRP in April 1990 by way of a deed (Kott Deed) that was recorded with the Register of Deeds in Brule County later the same month.

216.     At some later point in 1990, HRP entered negotiations to sell land that was eventually platted wrongfully by Osborne, to Raymond Sharping.

217.     No deal was reached on the sale of said land, but HRP permitted the Sharpings to begin possessing and farming the land.

218.     Accordingly, in a 1992 lease and agency agreement with Maynard Jensen to be the agent for HRP to lease the cropland of the partnership, the land HRP was permitting the Sharpings to occupy and use was excluded from the cropland that Mr. Jensen was leasing out for the partnership.

219.     The plat of RH-2, dated August 3, 1992, is for 46.38 acres, and falsely states that the land so platted was owned by Osborne individually and by the Estate of Robert Healy. Said plat was approved on August 13, 1992.

220.     On August 1, 1992, Osborne executed a warranty deed conveying RH-2 to Raymond Sharping and his wife, Evelyn.

221.     The said warranty deed was never recorded nor delivered to the Sharpings.

---

[9] *Healy Ranch Partnership v. Sheila Mines, Larry Mines, Mary Ann Osborne, Estate of Robert Healy, Estate of Evelyn Sharping, Estate of Randolph Sharping, Estate of Raymond Sharping, Brule County*, 07CIV.21-11.  *Healy Ranch Partnership v. Mines*, 978 N.W.2d 768. ("HRP v. Mines").

222.     The said unrecorded deed includes a metes and bounds description that exactly matches the exclusionary language in the legal description attached to the agreement with Mr. Jensen noted above.

223.     HRI's application for the Family Farm Waiver, signed by Osborne and notarized by Attorney Fox's legal assistant on December 31, 1994, accepted by the South Dakota Secretary of State's office on April 4, 1996, attaches a document titled "Real Estate Mary Ann Healy Osborne" which claims ownership and possession of, in relevant part, the following described property:

> Lots Two, Three, Four and Five including Outlots RH 1 and 2 in the Southwest Quarter of the Northwest Quarter; and the Northwest Quarter of Section Twenty-Three, Township One Hundred Four North, Range Seventy;

> …All located West of the Fifth P.M., Brule County, South Dakota; …

224.     HRI's Farm Certificate of Authorization dated April 4, 1996, includes RH-2 in the legal description of land owned and possessed by HRI.

225.     Bret did not discover the deed transferring RH-2 to the Sharpings until April 25, 2017 from a file from Attorney Fox's law office.

226.     Bret then investigated record title to RH-2 and found the purported deed from Randolph Sharping, Raymond and Evelyn Sharping's son, to Larry and Sheila Mines, along with a number of other recorded instruments all filed for the record on July 20, 2012 at 1:00 pm regarding the property platted as RH-2, including a deed of distribution from the estate of Raymond Sharping to Randolph Sharping and a quit claim deed signed by Bryce on behalf of HRI.

227.     In addition, Bret learned of the probated Last Will and Testament of Raymond Sharping, dated January 24, 1996, which devised to Randolph Sharping "all real estate that I _may_ own in the following areas: Section Twenty-Three (23), Township One Hundred Four (104) North, Range Seventy (70), West of the 5th P.M., Brule County, South Dakota." (Emphasis added).

228.     Bret also found that Randolph Sharping had mortgaged the property in September 2008, alleged to be Out-lot RH-1 and Lot RH-2, for which Randolph Sharping asserted that he had good and marketable title to the property which included only 13.22 acres of RH-2.

229.     However, the legal description contained in the said mortgage claimed that all of the two lots were in the Southeast Quarter of the Northwest Quarter of Section 23, which is different from Lot RH-2's legal description contained in the purported deed from Randolph Sharping to Larry and Shelia Mines.

230.     At his July 31, 2017, deposition in *Healy I*, Bret had stated that there were innocent buyers on RH-1 and RH-2, referring to purported buyers associated with the quit claim deed Bryce signed.

231.     Bret had no knowledge on July 31, 2017, that any purchasers of real property have a duty under statute to investigate the public records.

232.     Larry and Sheila Mines were not innocent buyers of RH-2 because they had either actual or constructive notice of the 1990 deed (Kott Deed) conveying the property to HRP, which was on file with the Register of Deeds in Brule County.

233.     If Larry and Sheila Mines investigated the chain of title as required by statute, they would have discovered that Randolph Sharping did not have good and marketable title to the property platted as RH-2.

234.     From complete review of all available records, including those produced by the defendants in *HRP v. Mines*, no evidence exists that HRP, after taking ownership and record title to the property described in the Kott Deed, conveyed any of the property to Osborne, or to any other person or entity.

235.     HRI Attorney Lee Schoenbeck represented Larry and Sheila Mines in *HRP v. Mines*.

236.     In the Mines' Statement of Undisputed Material Facts dated April 1, 2021 (SUMF), SUMF #1 includes the following real property description:

> Lot RH-2, Sharping Subdivision, in portions of the Northwest Quarter and Meander Lots Two, Three, and Five in the Southwest Quarter of Section Twenty-three, Township One Hundred Four North, Range Seventy West of the 5th P.M., Brule County, South Dakota.

237.     The Mines' SUMF #2 references the unrecorded, undelivered 1992 deed executed by Osborne, which includes the following real property description:

> Beginning at the Northwest Corner of Outlot RH-1 in Section Twenty-Three, Township One Hundred Four North, Range Seventy, Brule County, South Dakota, thence Westerly along an existing fence to an existing fence heading in a Southerly direction, then South along such fence to a creek, thence Easterly along the creek to a point directly South of the Southeast Corner of Outlot RH-1, thence North to said Southeast Corner as shown in attached Exhibit "A", also described as: Lot RH-2, Sharping Subdivision, in portions of the Northwest Quarter and Meander Lots Two, Three and Five in the Southwest Quarter of Section Twenty-Three, Township One Hundred Four North, Range Seventy, West of the Fifth P.M., Brule County, South Dakota.

238.     SUMF #3 references the court order terminating Evelyn Sharping's life estate, and transferring her title and interest to Raymond Sharping, in real property described as:

> Lot RH One (RH-1) and Lot RH Two (RH-2), in Section Twenty-Three (23), Township One-Hundred Four (104) North, Range Seventy (70), West of the 5th P.M., Brule County, South Dakota.

239.     SUMF #4 asserts that "a Personal Representative's Deed of Distribution in the Estate of Raymond Sharping transferred title and interest in Lot RH-2 to Randolph Sharping," which includes the following real property description:

> Outlot RH1 and Lot RH2 in the Southeast Quarter of the Northwest Quarter (SE1/4NW1/4) of Section Twenty-Three (23), Township One Hundred Four (104) North, Range Seventy (70), West of the Fifth P.M., Brule County South Dakota.

240.     SUMF #5 asserts that "on June 21, 2012, Randolph Sharping sold the real property at issue in this proceeding, commonly referred to as Lot HR-2, to Larry Mines and Sheila Mines," citing to a warranty deed prepared by Attorney David Natvig that included the following real property description:

> Lot RH-2, Sharping Subdivision, in portions of the Northwest Quarter (NW ¼) and Meander Lots Two (2), Three (3), and Five (5) in the Southwest Quarter (SW ¼) of Section Twenty-three (23), Township One Hundred Four (104) North, Range Seventy (70) West of the 5th P.M., Brule County, South Dakota.

241.     SUMF #11 falsely states that Bret "referred to the Sharpings as 'innocent buyers,'" citing to his July 31, 2017 deposition in *Healy I*.

242.     In fact, Bret was referring to the purported buyers associated with the quit claim deed signed by Bryce, as explained above, and was not referring to the Sharping family as innocent buyers as Raymond Sharping knew that any contract for deed for the property required Bret's signature and consent.

243.     Moreover, Osborne had filed a motion to dismiss in which misrepresentations were made regarding Bret's ownership of HRP in addition to an evidence free assertion that HRP is a defunct entity, which were used by Attorney Schoenbeck's argument on behalf of the Mines and Sharpings and which the circuit court adopted.

244.     Osborne knowingly made false representations regarding HRP's ownership structure.

245.     Further, Osborne admitted in *Healy I* that there was no written amendment, as required, to the 1986 Partnership Agreement, and she knew HRP was not a defunct entity despite representing that it was in *HRP v. Mines*.

246.     The circuit court granted the Mines summary judgment, determining that they had acquired title through adverse possession and quieting title in their favor.

247.     To affirm the circuit court's decision, the Supreme Court relies on its *Healy I* decision, referencing Bret's claim that Osborne and Fox acted fraudulently to transfer RH-2 without authority and noting that Bret's discovery requests in *Healy I* "indicate that Bret believed [Osborne] had damaged him by not using the RH-2 sale proceeds to pay down HRP debt." See *HRP v. Mines* Supreme Court Opinion, at ¶ 19.

248.     Further, the Supreme Court quotes Bret's deposition testimony from *Healy I* – to characterize Bret as having "claimed that the transfer of RH-2 'has caused the loss of land'" – as follows:

> [I]t was transferred to Raymond Sharping. It made it through two probates ... and then was sold to Larry Mines, and then Bryce Healy signed a quitclaim deed for it. So, yes, it has caused me to lose land that I won't get back because there were innocent buyers on RH-2 ....

See id.

249.     With the background being drawn from *Healy I*, in paragraph twenty of its *HRP v. Mines* Opinion, the Supreme Court observes:

> In the present action, however Bret now claims that RH-2 was not transferred at all. Under his more recent view, he contends that Mary Ann's lack of authority to transfer RH-2 means that any act to convey the property was "null and void" and, as a consequence, HRP still retains ownership.

250.     The Supreme Court then dedicates paragraphs 22 and 23 to a section it titles "*Healy v. Osborne*," discussing *Healy I*.

251.     In addressing Bret's claim that the Sharping's use of RH-2 was permissive, in the decisional portion of its opinion, the Supreme Court applied judicial estoppel, reasoning that Bret previously claimed, in *Healy I*, that RH-2 has been fraudulently transferred.

252.     Bret's statements regarding RH-2 in *Healy I* were not irreconcilable with the substantial evidence of permissive occupancy that was put forth in *HRP v. Mines*.

253.     In purporting to apply judicial estoppel, the Supreme Court ignored its own line of precedent setting forth the prerequisites to applying the doctrine. See, e.g., Gesinger v. Gesinger, 531 N.W.2d 17, 21 (S.D. 1995); State v. St. Cloud, 465 N.W.2d 177, 180 (S.D. 1990); Table Steaks v. First Premier Bank, N.A., 2002 S.D. 105, ¶¶ 32-33, 650 N.W.2d 829, 838; see also Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc., No. 4:20-CV-04058-KES, 2023 WL 1820982 (D.S.D. Feb. 8, 2023) (citing Brown v. Hanson, 798 N.W.2d 422, 430 (quoting Table Steaks, 650 N.W.2d at 837)).

254.     The prerequisites for application of judicial estoppel were not satisfied.

255.     In addressing the Mines's adverse possession claim, the Supreme Court applied SDCL 15-3-15 and determined, in relevant part, that the Mineses had been (1) for "ten successive years in possession" of RH-2 (2) under "claim and color of title made in good faith," by "tacking" Randolph Sharping's possession, and claim and color of title made in good faith, onto that of the Mines's.

256.     Randolph Sharping's "color of title" to RH-2, at best, applied to a small portion of Lot RH-2, that north of the quarter line.

257.     The plat of RH-2 is for exactly 46.38 acres in a 640-acre section of land, Section 23.

258.     Raymond Sharping's Will stated that he was devising property in Section 23 that he "*may*" own.

259.     The deed of distribution from Raymond Sharping's estate conveys only 13.22 acres of RH-2 to Randolph Sharping.

260.     Randolph Sharping, on September 15, 2008, mortgaged only 13.22 acres of RH-2.

261.     The said mortgage on the 13.22 acres of RH-2 was in effect at the time of the June 21, 2012 warranty deed to Larry and Sheila Mines.

262.     The Supreme Court's decision in *HRP v. Mines* quieted title by adverse possession in favor Larry and Sheila Mines to all of RH-2's 46.38 acres – including the 33.16 acres excluded from the deed of distribution and excluded from the mortgage Randolph Sharping had on the property.

263.     The Supreme Court foreclosed HRP from maintaining a quiet title claim under SDCL 21-41-1, to RH-2.

264.     The Supreme Court conducted fact finding and weighed evidence.

265.     The Supreme Court's *HRP v. Mines* decision is cantilevered out of *Healy I*.

RICO[10]

266.     The District Court's decision in *RICO* is also cantilevered out of *Healy I*.

---

[10] *Bret Healy v. Albert Steven Fox, David Larson, Larson Law PC, Mary Alice Larson, Bryce Healy, Brule County Abstract Company, Inc., Larson, Sundall, Larson, Schaub and Fox PC, Mary Ann Osborne*, 3:21-cv-3004.  *Bret Healy v. Albert Fox, et al.*, 46 F.4th 739.  ("*RICO*").

267.     The Decision of the Eighth Circuit Court of Appeals in *RICO* is cantilevered out of *Healy I* and *Healy II*.

268.     While the matter was pending appeal, counsel for Bret sent to all counsel of record for the defendants a dear counsel letter dated August 15, 2022, requesting that they file a correction to material statements they made in their briefing and oral argument, concerning Bret's role in HRI and his access to corporate records.

269.     The said material statements turned out to be factually incorrect, based on information that had been disclosed in the course of the then-pending corporate records litigation, noted in footnote 11 below.

270.     Counsel for Osborne, Bryce, and Fox, including Jack Hieb, Lee Schoenbeck, and Emily Smoragiewicz, respectively, refused to correct the record with the Court of Appeals.

*Corporate Records Litigation[11]*

271.     Bret had filed a Verified Complaint and Application for Inspection of Records on February 22, 2022, after HRI, Barry and Bryce had refused to comply with Bret's written requests for HRI records.

272.     HRI filed an answer and counterclaim asserting that *Healy I* and *Healy II* were relevant to the corporate records litigation.

273.     On July 14, 2022, Bret's counsel sent HRI's counsel, Lee Schoenbeck, a dear counsel letter pointing out four material assertions that had been included in HRI's Appellant Brief in *Healy II*, in the section titled Statement of Facts, on pages 8 and 10.

274.     It was further pointed out to Mr. Schoenbeck that the four assertions of fact were unsupported by the available record, inaccurate at best, and were in fact false.

275.     Finally, Mr. Schoenbeck was advised of the continuing duty under Rule 3.3 of the Rules of Professional Conduct, regarding the four false material facts that were included in HRI's briefing to the South Dakota Supreme Court.

276.     Mr. Schoenbeck called the dear counsel letter "nonsense," failing to otherwise substantively respond and refusing to correct the record.

277.     Although the Supreme Court's Chief Justice was disqualified from participating in the *Healy I* decision and had deemed himself disqualified from participating in the *Healy II* decision, he concurred in *HRP v. Mines* and participated in the decision on the

---

[11] *Bret Healy v. Healy Ranch, Inc., Barry Healy, Bryce Healy*, 07 CIV.22-12.  *Bret Healy v. Healy Ranch, Inc.*, no. 30134.

corporation records litigation, signing the Order Directing Issuance of Judgment of Affirmance, concluding that the appeal was without merit because, in part, the issues were "clearly controlled by settled South Dakota law or federal law binding upon the states," and taxing $5,009.60 in favor of HRI and against Bret.

## COUNT 1:    VIOLATION OF DUE PROCESS

278.    Plaintiffs restate and reallege the foregoing paragraphs 1 through 277 as though fully set forth herein.

279.    The Supreme Court deprived Bret and HRP of their property interests without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

280.    The Supreme Court deprived Bret and HRP of their liberty interests without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

281.    The Supreme Court pretended that Bret did not dispute the June 28, 2016 email, the November 2001 confidential financial statement, or that he did not dispute the defendants' statements of undisputed material facts in *Healy I*.

282.    A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.

283.    The Supreme Court deprived Bret and HRP of significant property and liberty interests without granting them an opportunity, at a meaningful time and in a meaningful manner, for hearing appropriate to the nature of the case.

284.    The Supreme Court deprived Bret and HRP of their property and/or liberty interests created by state statute.

285.    The Supreme Court deprived HRP of its real property interests in Healy Ranch without due process of the law.

286.    The Supreme Court deprived Bret of the value of his personal property interest in HRP without due process of the law.

287.    The Supreme Court denied Bret and HRP due process of the law.

## COUNT 2:    FRAUD, MISREPRESENTATION, OR OTHER MISCONDUCT

288.    Plaintiff restates and realleges the foregoing paragraphs 1 through 287 as though fully set forth herein.

289.     The production and presentation of HRI's corporate book in *Healy I* was the preparation of a false record with the intent to produce it or to allow it to be produced as genuine in a proceeding authorized by law.

290.     The production and presentation of Bret's forged signature on corporate records was the preparation of a false record with the intent to produce it or to allow it to be produced as genuine in a proceeding authorized by law.

291.     The production and presentation of 35 waivers in *Healy I*, that did exist prior, was the preparation of a false record with the intent to produce it or to allow it to be produced as genuine in a proceeding authorized by law.

292.     The making of the altered email evidence was the preparation of a false record with the intent to produce it or to allow it to be produced as genuine in a proceeding authorized by law.

293.     Osborne, HRI, Barry, Bryce, and Fox, through their respective counsels, Jack Hieb, Lee Shoenbeck, and Kara Semmler, failed to correct the record regarding the July 9, 1999 letter, produced in *Healy I* on August 3, 2017, that Osborne was retaining 28% of her HRI shares after execution of the February 2000 contract for deed.

294.     Osborne, HRI, Barry, and Bryce, through their respective counsels, Jack Hieb and Lee Schoenbeck, made misrepresentations to the circuit court and Supreme Court in *Healy I* and *Healy II*, that Bret's confidential financial statement was obtained from a subpoena in discovery.

295.     The incomplete and non-responsive discovery answers by HRI, Barry, and Bryce in *Healy I* and *Healy II* were failures to disclose or produce, constituting misconduct.

296.     Counsel for Osborne, Bryce, and Fox, Jack Hieb, Lee Schoenbeck, and Emily Smoragiewicz, respectively, refused to correct the record with the Court of Appeals, correcting certain material statements that turned out to be false based on information disclosed through the corporate records litigation.

297.     Counsel for HRI, Barry and Bryce, Lee Schoenbeck refused to correct the record with the Supreme Court.

## <u>COUNT 3:     FRAUD UPON THE COURT</u>

298.     Plaintiffs restate and reallege the foregoing paragraphs 1 through 297 as though fully set forth herein.

299.     The making of the altered email evidence was the preparation of a false record with the intent to produce it or to allow it to be produced as genuine in a proceeding authorized by law.

300.     The production of the altered email evidence in *Healy I* was an attempt to defile the circuit court.

301.     The production of the altered email evidence in *Healy I* defiled the Supreme Court.

302.     The misrepresentations to the circuit court and Supreme Court in *Healy I* and *Healy II* that Bret's confidential financial statement was obtained from a subpoena in discovery, was fraud by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

## COUNT 4:     INJUNCTIVE AND DECLARATORY RELIEF – 28 U.S.C. § 2201

303.     Plaintiffs restate and realleges the foregoing paragraphs 1 through 302 as though fully set forth herein.

304.     The partnership agreement executed January 25, 1986, by Bret, Osborne, and DeLonde, states in Section VIII: "It is the intent of the parties that any interest of Delonde Healy in the Healy Ranch partnership by the terms of this agreement be completely transferred directly to Bret Healy effective with the date of this agreement[.]".

305.     The partnership agreement listed DeLonde's interest in HRP (albeit inaccurately) as 25%, after the meeting of minds regarding the 1986 Partnership Agreement and FROR were reached on January 2, 1986, which version dated that day contained no such limitation of Delonde's interest to 25%.

306.     The January 2, 1986 draft of the 1986 Partnership Agreement was not provided to Bret.

307.     In fact, at the execution of 1986 partnership agreement, DeLonde held a 50% ownership interest in HRP.

308.     Osborne, HRI, Barry and Bryce all had knowledge of, or were parties to, or were bound as heirs and assigns, by the 1986 partnership agreement at the time it was executed.

309.     In 1995, Osborne caused HRP's recorded real property interest in Healy Ranch real property to be conveyed to HRI.

310.     After the conveyance, HRI held record title to Healy Ranch.

311.     The fake email was an attempt by Osborne, Barry, and Bryce to capitalize HRI by getting Bret to admit that he put his interest in HRP into the corporation.

312.      The fake subpoena was an attempt to use Bret's confidential financial statement as an admission that HRI stock was his only asset, in attempt to capitalize HRI.

313.      Bret never agreed to put his partnership interest into the corporation.

314.      HRI's capital stock originates wholly within HRP.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiff prays for judgment as follows:

A.  Vacating, voiding, or setting aside the judgments issued in *Healy I*, *Healy II*, *HRP v Mines*, *RICO* and the Order Directing Issuance of Judgment of Affirmance in the corporate records litigation, relieving the Plaintiff from operation of the same.

B.  Declaring Bret Healy owner of two-thirds of all the outstanding shares of HRI capital stock.

C.  Declaring Barry and Bryce Healy owners, each, of one-sixth of all the outstanding shares of HRI capital stock.

D.  For such other and further relief as the Court deems reasonable and appropriate, just, and equitable.

<b>PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.</b>

Respectfully submitted this 2nd day of August 2023.


/s/ Tucker Volesky_____
Tucker Volesky
Attorney at Law
356 Dakota Ave. S.
Huron, SD 57350
(605) 352-2126
tucker.volesky@tuckervoleskylaw.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Bret Healy and Healy Ranch Partnership | (See Attachment) |

**(b)** County of Residence of First Listed Plaintiff   Brule County, SD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hughes County, SD
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Tucker Volesky, Attorney at Law, 356 Dakota Ave S, Huron, SD  57350, (605) 352-2126

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br><br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [x] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609<br><br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | [ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 2201
Brief description of cause:
Injunctive and Declaratory Relief

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 8/2/2023 | /s/ Tucker Volesky |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## CIVIL COVER SHEET (ATTACHMENT)

**DEFENDANTS:**

Supreme Court of South Dakota, Healy Ranch Inc., Mary Ann Osborne, Barry Healy,
Bryce Healy, Albert Steven Fox, Larry Mines, Sheila Mines