UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BRET HEALY, HEALY RANCH PARTNERSHIP,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>SUPREME COURT OF SOUTH DAKOTA, JANINE KERN, MARK SALTER, JON SOGN, PATRICIA DEVANEY, SCOTT MYREN, STEVEN JENSEN, OFFICIALLY AND INDIVIDUALLY, HEALY RANCH INC., MARY ANN OSBORNE, BARRY HEALY, ALBERT STEVEN FOX, LARRY MINES, SHEILA MINES, BRYCE HEALY,<br><br>                    Defendants. | 4:23-CV-04118-RAL<br><br><br>OPINION AND ORDER DISMISSING CASE AND FOR SANCTIONS |

Plaintiffs Bret Healy and Healy Ranch Partnership ("HRP") filed a Complaint in this case against the Supreme Court of South Dakota, Healy Ranch Inc., Mary Ann Osborne, Barry Healy, Bryce Healy, Albert Steven Fox, Larry Mines, and Sheila Mines. Doc. 1. The Complaint invoked federal question jurisdiction under 28 U.S.C. § 1331 and alleged four causes of action: 1) Violation of Due Process against the Supreme Court of South Dakota relating to an appellate decision it rendered allegedly depriving Plaintiffs of their property and liberty interests; 2) Fraud, Misrepresentation, or Other Misconduct against various defendants; 3) Fraud Upon the Court against various defendants; and 4) Injunctive and Declaratory Relief under 28 U.S.C. § 2201. Doc. 1 at 27–30. Plaintiffs then amended the Complaint, naming as defendants Judge Jon Sogn and the Justices of the Supreme Court of South Dakota, in their official and individual capacities, and

1

adding a claim for deprivation of civil rights under 42 U.S.C. § 1983.  Docs. 32, 32-1, 63.  This Court held a hearing on pending motions on November 20, 2023, and now grants the motions to dismiss and for sanctions.

## I.    Procedural History and Related Facts

Plaintiffs' claims relate to a longstanding and oft-litigated dispute regarding ownership of the Healy family farm-ranch business, Healy Ranch, Inc. ("HRI"), and the litigation and judgments from state and federal courts against Plaintiff Bret Healy resolving the ownership dispute.  Like the current matter, the prior proceedings—including Healy v. Osborne, 934 N.W.2d 557 (S.D. 2019) ("Healy I"); Healy Ranch, Inc. v. Healy, 978 N.W.2d 786 (S.D. 2022) ("Healy II"); Healy Ranch P'ship v. Mines, 978 N.W.2d 768 (S.D. 2022) ("Mines"); and Healy v. Fox, 572 F. Supp. 3d 730 (D.S.D. 2021) ("Fox"), aff'd, Healy v. Fox, 46 F.4th 739 (8th Cir. 2022)[1]—resolved various claims which, though based on alternative legal theories and seeking distinct forms of relief, ultimately attempted to assert that HRP and Plaintiff Bret Healy had greater ownership interests in HRI and its assets.  Having lost in each prior case, Plaintiffs Bret Healy and HRP again seek to relitigate ownership of Healy Ranch assets by alleging constitutional errors and fraud in the prior litigation.

---

[1] The court in Healy I specifically "decline[d] to address Bret's claim of ownership" and instead "center[ed] on the timeliness of Bret's claims."  Healy I, 934 N.W.2d at 563.  The court found Bret's contract and torts claims untimely and barred by the statutes of limitations; in so deciding, the Healy I court effectively prevented Bret Healy from challenging that each of Bret, Barry, and Bryce owned one-third of HRI, indirectly confirming the ownership status quo.  In Healy II, a quiet title action, Plaintiffs attempted to argue HRP owned the Healy ranch, but the Supreme Court of South Dakota determined the claim was barred under res judicata.  In Mines, HRP, controlled by Bret, argued that it, and not HRI, owned certain land and filed an action to quiet title to property, but the court decided against HRP and determined the Mineses retained title.  Lastly, in Fox, this Court determined Plaintiff Bret Healy's action under 18 U.S.C. § 1964(c) of the Racketeer Influenced and Corrupt Organizations Act was barred by res judicata and ruled for the defendants, which the Eighth Circuit affirmed on the same grounds.

In the Prayer to the Complaint, Plaintiffs sought to have this Court vacate, void or set aside various final judgments of state and federal courts; to declare Plaintiff Bret Healy to own two-thirds of the shares of HRI, contrary to what was adjudicated in state court; to reduce Barry and Bryce Healy's ownership of HRI to one-sixth each, contrary to what was adjudicated in state court; and for other and further relief. Doc. 1 at 30.

Each of the defendants filed motions to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. The Supreme Court of South Dakota invoked Eleventh Amendment immunity and the Rooker-Feldman doctrine, Docs. 17, 18, and the remaining defendants argued the action was barred under the Rooker-Feldman doctrine and res judicata. Docs. 19, 20, 23, 24, 27, 28. Indeed, in addition to losing in prior state-court cases, Plaintiff Bret Healy previously had sued Defendants Albert Steven Fox, Bryce Healy, and Mary Ann Osborne in this Court under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), and had lost before this Court, see Fox, 572 F. Supp. 3d at 734, and on appeal, Healy v. Fox, 46 F.4th at 742. Both this Court and the Eighth Circuit concluded that res judicata barred Plaintiff Bret Healy's claims based on his prior unsuccessful state-court litigation on related claims in Healy I. The Eighth Circuit in affirming this Court also referenced Plaintiff Bret Healy losing a quiet title counterclaim in Healy II, which was "an overt effort to litigate the same cause of action that he litigated in [Healy I]." Fox, 46 F.4th at 743 (quoting Healy II, 978 N.W.2d at 799). Plaintiffs' current Amended Complaint reads as an attempt to have this Court reverse Healy I, Healy II, and Fox and declare Bret Healy the winner, notwithstanding the Supreme Court of South Dakota decisions and the prior federal court litigation affording res judicata effect to those decisions.

Plaintiffs resist dismissal and argue the Rooker-Feldman doctrine and res judicata do not bar their claims. Docs. 33, 34, 35. Plaintiffs filed a Motion and proposed Amended Complaint

within 21 days of the first motion to dismiss, which this Court granted under Fed. R. Civ. P. 15(a)(1)(B). Docs. 32, 32-1, 62. The Amended Complaint names not only the Supreme Court of South Dakota but also adds all of its current justices (plus one Second Circuit judge who sat by designation on Healy I and Healy II). Doc. 63. The Amended Complaint adds a fifth claim under 42 U.S.C. § 1983 contending, rather astonishingly, that the justices and judge sitting by designation in handling the appeals "took actions in the complete absence of all jurisdiction"—notwithstanding that the Plaintiffs were the appellants in the cases who invoked appellate jurisdiction—and thereby violated Plaintiffs' due process and equal protection rights. Doc. 63 ¶¶ 351–360. The Amended Complaint retains the same Prayer as the original Complaint, though it adds requests to "[d]eclar[e] Plaintiff's future rights and remedies unaffected by" all past decisions and to award Plaintiffs punitive damages, attorney's fees, and costs. Doc. 63 at 34.

All defendants except the Supreme Court of South Dakota, the Justices, and Judge Sogn, also filed motions seeking sanctions under Fed. R. Civ. P. 11(b) and 28 U.S.C. § 1927. Docs. 29, 30, 31. Plaintiffs oppose those motions. Doc. 36. Plaintiffs filed a "Motion for Preliminary Injunction and Restraining Order." Doc. 52. Because the motion did not meet the requirements of Fed. R. Civ. P. 65(b), this Court refused to enter a preliminary injunction. Doc. 59 at 4. At the conclusion of a motion hearing on November 20, 2023, this Court denied the Plaintiffs a preliminary injunction because the Dataphase factors, particularly the absence of a showing of likelihood of success on the merits, favored denial of the requested preliminary injunction. Doc. 62. This Court now addresses the remaining motions.

## II.     Motions to Dismiss

### A. Rule 12(b)(1) Standard

4

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction.  Such a challenge can be either facial or factual in nature.  Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction.  V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000).  Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n.6).  As such, courts must accept a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions."  Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).  When determining whether to grant a Rule 12(b)(6) motion for failure to state a claim, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment."  Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (internal quotations and citation omitted).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment.  Osborn, 918 F.2d at 730 (citation omitted); see also Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the

actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction[,] . . . the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction."). In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation omitted). Therefore, in deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See Osborn, 918 F.2d at 729 n.6, 730.

The challenge to subject matter jurisdiction in this case has both facial and factual dimensions to it. Plaintiffs' Complaint and Amended Complaint reference the prior litigation and decisions in state and federal courts, so this Court can refer to the prior decisions whether the challenge is facial or factual.

"[F]ederal courts are courts of limited jurisdiction." United States v. Afremov, 611 F.3d 970, 975 (8th Cir. 2010). This Court "has a special obligation to consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). "This obligation includes the concomitant responsibility to consider *sua sponte* the Court's subject matter jurisdiction where the Court believes that jurisdiction may be lacking." Id. (cleaned up) (quoting Clark v. Baka, 593 F.3d 712, 714 (8th Cir. 2010) (per curiam)). Thus, this Court rejected Plaintiffs' argument that it should ignore whether federal subject matter jurisdiction exists because the motions to dismiss related to the original Complaint and not to the Amended Complaint. See Doc. 59 at 5–6.

Plaintiffs invoke federal question jurisdiction under 28 U.S.C. § 1331; there is no complete diversity of citizenship between the parties. Under 28 U.S.C. § 1331, federal district courts have

jurisdiction over cases arising out of federal law, including federal statutes and the United States Constitution. <u>Cagle v. NHC Healthcare-Maryland Heights, LLC</u>, 78 F.4th 1061, 1066 (8th Cir. 2023). Merely identifying a federal issue, however, is not enough to confer federal jurisdiction; rather, the right being enforced must arise from federal law. <u>See</u> <u>id.</u> Further, alleging federal question jurisdiction is not always enough to establish a court's power to hear a case because other bars to jurisdiction may exist. <u>See, e.g.</u>, U.S. Const. amend. XI (recognizing state sovereign immunity); <u>Rooker v. Fidelity Tr. Co.</u>, 263 U.S. 413 (1923) (describing a district court's lack of appellate jurisdiction over state court rulings); <u>Dist. of Columbia Ct. of Appeals v. Feldman</u>, 460 U.S. 462 (1983) (same).

Here, Claim 1 alleges a violation of Due Process under the Fourteenth Amendment and Claim 5 alleges a deprivation of rights under 42 U.S.C. § 1983. Both arise under federal law and, therefore, can potentially confer subject matter jurisdiction on this Court. Claims 2 and 3, however, do not allege a federal question sufficient for jurisdiction, despite Plaintiffs' assertion that Fed. R. Civ. P. 60 and SDCL 15-6-60(b) serve as the basis from which federal jurisdiction arises. Rule 60 is a procedural rule that does not create an independent basis of federal jurisdiction. <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 370 (1978) ("[I]t is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction.") (citing Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts."))[2] SDCL 15-6-60(b), of course, is a state procedural rule that does not

---

[2] In addition to being a non-jurisdictional procedural rule, Plaintiffs' argument under Rule 60 fails for two more reasons. First, even if mention of Rule 60 were sufficient to confer jurisdiction on this Court, Rule 60 does not apply to these facts. Rule 60 allows parties to seek relief from judgments obtained by fraud, misrepresentation, other misconduct, or fraud on the court. However, the "fraud on the court" exception applies when the defrauded court, which is the one that originally rendered the decision, is the court in which the action alleging fraud is brought. <u>Williams v. Apker</u>, 774 F. Supp. 2d 124, 128 (D.D.C. 2011) ("Rule 60(b), however, only provides

apply in federal court.  Claim 4 references the Federal Declaratory Judgment Act, 28 U.S.C. §

2201, but that statute is not an independent source of federal jurisdiction.  Zutz v. Nelson, 601 F.3d

842, 850 (8th Cir. 2010) ("[T]he Declaratory Judgment Act . . . does not provide an independent

basis for federal jurisdiction." (quoting Victor Foods, Inc. v. Crossroads Econ. Dev., 977 F.2d

1224, 1227 (8th Cir. 1992))).  Plaintiffs do not argue for original jurisdiction over Claim 4 anyway.

See Doc. 34 at 1–2.  Therefore, this Court only has jurisdiction over the present action if Claims 1

or 5 are not subject to other jurisdictional bars, such as sovereign immunity and the Rooker-

Feldman doctrine, as Defendants argue.

### B.  Rooker-Feldman Doctrine

---

a federal district court with subject matter jurisdiction over requests for reconsideration of federal district court decisions; it does not give the court jurisdiction to relieve a party from state court judgments." (citations omitted)); Small v. Milyard, 488 Fed. App'x 288, 290 (10th Cir. 2012) ("By alleging misconduct and other improprieties in the state court, [petitioner] is attacking the validity of the state-court proceedings and his conviction or sentence.  Such an attack does not fall under Rule 60(b)." (citation omitted)); Holder v. Simon, 384 Fed. App'x 669, 670 (9th Cir. 2010) ("Rule 60(b) does not provide a basis for subject matter jurisdiction over a claim for relief from a state court judgment." (citations omitted)); see also United States v. Sierra Pac. Indus., Inc., 862 F.3d 1157, 1168 (9th Cir. 2017) ("[R]elief for fraud on the court is available only where the fraud was not known at the time of settlement or entry of judgment." (citations omitted)).  Here, Plaintiffs allege fraud on the state court by arguing the defendants in Healy I engaged in fraudulent conduct by producing false corporate records and a false email, misrepresenting facts, and making false statements. Doc. 63 ¶¶ 311–37.  Plaintiffs then attempt to argue that the alleged fraud on the South Dakota state court, by extension, constitutes fraud on this federal Court because this Court relied on the Healy I case when it decided Fox.  Yet, Plaintiffs provide no support for their proposition that fraud in state court can somehow become fraud in a federal court or for their position that this Court can vacate a state judgment or a federal judgment that the Eighth Circuit affirmed.

Second, even if Rule 60 were jurisdictional, the Rooker-Feldman doctrine would still apply and defeat this Court's jurisdiction.  Plaintiffs are requesting this Court review and vacate the prior state court rulings for fraud in those proceedings against the Rooker-Feldman doctrine, and Rule 60 cannot overcome this jurisdictional hurdle because, despite Plaintiffs' citations to out-of-circuit cases, the Eighth Circuit does not recognize fraud as an exception to the Rooker-Feldman doctrine. See Eiler v. Avera McKennan Hosp., 2016 WL 1117441, at *3 (D.S.D. Mar. 21, 2016) (citing Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1035–36 (8th Cir. 1999)).

The <u>Rooker-Feldman</u> doctrine takes its name from two decisions of the Supreme Court of the United States: <u>Rooker v. Fidelity Tr. Co.</u>, 263 U.S. 413 (1923), and <u>Dist. of Columbia Ct. of Appeals v. Feldman</u>, 460 U.S. 462 (1983). The doctrine holds that "'only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment.'" <u>Friends of Lake View Sch. Dist. 25 v. Beebe</u>, 578 F.3d 753, 758 (8th Cir. 2009) (quoting 18B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 4469 (2d ed. 2002)). An appeal from a state court applies not only to direct appeals, but also to federal actions alleging "general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." <u>Lemonds v. St. Louis Cnty.</u>, 222 F.3d 488, 492–93 (8th Cir. 2000) (quoting <u>Feldman</u>, 460 U.S. at 482 n.16); <u>see also</u> <u>Prince v. Ark. Bd. Of Exam'rs in Psych.</u>, 380 F.3d 337, 341 (8th Cir. 2004) ("Once a party has litigated in state court . . . he 'cannot circumvent <u>Rooker-Feldman</u> by recasting his or her lawsuit as a [section] 1983 action.'" (quoting <u>Bechtold v. City of Rosemount</u>, 104 F.3d 1062, 1065 (8th Cir. 1997) (second alteration in original))). The state and federal constitutional claims are "inextricably intertwined" if the federal claim succeeds only upon a determination that the state court wrongly decided the issue before it. <u>Id.</u> at 493.

The Eighth Circuit uses a four-part test to determine whether a federal action violates <u>Rooker-Feldman</u>: (1) plaintiff must have lost in state court, (2) plaintiff complains of injury arising from the state court judgment, (3) the action invites the district court to review and reject the state court ruling, and (4) the state court decision was rendered prior to the federal court action. <u>Fochtman v. Hendren Plastics, Inc.</u>, 47 F.4th 638, 643 (8th Cir. 2022) (explaining the circumstances in which the doctrine applies); <u>Christ's Household of Faith v. Ramsey Cnty.</u>, 618

F. Supp. 2d 1040, 1044 (D. Minn. 2009) (numbering the doctrine as a four-part test); see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).[3]

Here, the elements of the Rooker-Feldman doctrine apply to Plaintiffs' Claims 1 and 5. First, Plaintiff Bret Healy lost in Healy I and Healy II when the Supreme Court of South Dakota determined Bret Healy did not prevail on his claims and, consequently, his efforts to prove ownership of more than one-third of HRI or its assets. Healy I, 934 N.W.2d at 565; Healy II, 978 N.W.2d at 800–03.

Second, the state court judgments affecting ownership of HRI and its assets caused the injury of which Plaintiffs complain. Claim 1 of the Complaint, both in the initial pleading and as amended, specifically alleges the Supreme Court of South Dakota (and the judge and justices thereof) "deprived" Plaintiffs of "significant property and liberty interests" without meaningful hearing and due process by deciding Plaintiff Bret Healy only owned one-third of HRI. Doc. 1 ¶¶ 279–87; Doc. 63 ¶¶ 302–10. Claim 5 contends the Supreme Court of South Dakota (and the judge and justices thereof) adjudicated the prior related cases "in the complete absence of all jurisdiction" and deprived Plaintiffs of civil rights, due process, and equal protection in violation of 42 U.S.C. § 1983 by rulings effectively limiting Plaintiff Bret Healy to ownership of just a one-third interest in HRI. Doc. 63 at ¶¶ 351–60. Therefore, the deprivation of rights causing the injury alleged in both Claims 1 and 5 arises from the state-court judgments.

---

[3] Plaintiffs attempt to conduct a separate analysis under each Rooker and Feldman and claim that neither case individually applies to this current litigation, making the Rooker-Feldman doctrine inapplicable. The Eighth Circuit, however, applies the Rooker-Feldman doctrine as a single, four-part analysis derived from the Supreme Court's interpretation of the doctrine in Exxon Mobil. See, e.g., Fochtman, 47 F.4th at 643 (8th Cir. 2022); Shelby Cnty. Health Care Corp. v. Southern Farm Bureau Cas. Ins. Co., 855 F.3d 836, 840 (8th Cir. 2017); Caldwell v. DeWoskin, 831 F.3d 1005, 1008 (8th Cir. 2016); Germain Real Estate Co., LLC v. HCH Toyota, LLC, 778 F.3d 692, 695 (8th Cir. 2015). This Court will also apply the unified doctrine, as binding precedent would counsel, instead of interpreting and applying the cases independently as Plaintiffs do.

Third, to remedy such allegedly unconstitutional conduct, Plaintiffs directly ask this Court to vacate, void, or set aside "the judgments issued in Healy I, Healy II, [and] HRP v Mines" and declare "Plaintiff's future rights and remedies unimpaired by the decisions issued in" those cases. Doc. 1 at 30; Doc. 63 at 34. Such relief invites this Court to "review and reject" the prior state-court judgments in violation of the Rooker-Feldman doctrine. See Fochtman, 47 F.4th at 643; Exxon Mobil, 544 U.S. at 284. Plaintiffs, however, argue both that their present claims are not "inextricably intertwined" with prior state cases[4] and that this Court is not being asked to review and reject the state-court judgments because the state court "previously presented with the same claims declined to reach their merits." Simes v. Huckabee, 354 F.3d 823, 830 (8th Cir. 2004). Although the state circuit court and Supreme Court did not directly address Plaintiffs' due process claims, the analysis is not as simple as Plaintiffs suggest.

Plaintiffs' reliance on Simes mistakes the exception to the rule for the rule itself. In fact, in Prince, which was decided that same year, the Eighth Circuit wrote that the "*exception* to the [Rooker-Feldman] doctrine we recognized in Simes did not apply" to the plaintiff's claim when the plaintiff "*could have raised* all of his constitutional challenges . . . in his state court case."

_____

[4] Whether the federal claims must be "inextricably intertwined" with the state-court rulings for the Rooker-Feldman bar to apply is a bit of an open question in the Eighth Circuit after Exxon Mobil. Compare Robins v. Ritchie, 631 F.3d 919, 925 (8th Cir. 2011) (finding federal claims barred under an "inextricably intertwined" Rooker-Feldman analysis), with Edwards v. City of Jonesboro, 645 F.3d 1014 (8th Cir. 2011) (finding Rooker-Feldman did not bar the claims without using the "inextricably intertwined" test). Nonetheless, Plaintiffs' underlying position in arguing lack of entwinement is that this Court can decide the issues presented to it without undermining the state-court judgments. See Prince, 380 F.3d at 341 (explaining state and federal constitutional claims are "inextricably intertwined" if the federal claim succeeds only by determining the state court wrongly decided the issue). For this reason, this Court addresses the argument under the third requirement of the Rooker-Feldman doctrine, which similarly asks whether the Plaintiff is requesting this Court undermine the state-court decision by reviewing and rejecting it, ostensibly for having been wrongly decided. See Fochtman, 47 F.4th at 643 (emphasizing that "federal district courts are courts of original jurisdiction" unable to "serv[e] as appellate courts to review state court judgments").

Prince, 380 F.3d at 341–42 (emphasis added).   Whether preclusion under the Rooker-Feldman doctrine applied depended on whether the litigants had a "reasonable *opportunity* to raise their federal claims." Id. at 341 (emphasis added).   The state court in Prince did not reach the merits of each claim because the plaintiff had voluntarily dismissed the action with prejudice, but that final judgment was still sufficient under Rooker-Feldman to preclude the plaintiff from presenting his constitutional due process and § 1983 claims in the federal court.   Id. at 340.   Similarly, in this case, the final judgments and dismissal of the claims in Healy I for being barred by the statute of limitations, and by later courts for res judicata, are sufficient under Rooker-Feldman to preclude Plaintiffs from bringing their constitutional due process and § 1983 claims in this Court.

Moreover, the Eighth Circuit after Simes cleared up the confusion about the effect on Rooker-Feldman analysis of the absence of a final judgment.   The Eighth Circuit in Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750 (8th Cir. 2010), acknowledged

> [i]t appears there is some tension in [the Eighth Circuit's] prior precedents as to whether the Rooker-Feldman doctrine will bar a federal court from exercising jurisdiction when a state court previously ruled against the plaintiff without reaching the merits of the dispute. In Friends of Lake View, for example, this court stated "'the Rooker-Feldman doctrine does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits.'" Friends of Lake View, 578 F.3d at 758 (quoting Simes[, 354 F.3d at 830]).   In other cases, however, this court held "[a]pplication of the Rooker-Feldman doctrine does not depend on a final judgment on the merits of an issue.["] Goetzman v. Agribank, FCB (In re Goetzman), 91 F.3d 1173, 1178 (8th Cir. 1996).

Dodson, 601 F.3d at 755 n.5 (fourth alteration in original).   In Dodson, a couple enrolled in an in vitro fertilization ("IVF") program at the University of Arkansas for Medical Sciences and created eighteen embryos. Id. at 752.   According to a contract the couple signed with the IVF program, the medical director of the program would have control over the embryos if, prior to implantation, the couple divorced. Id.   They did divorce before the embryos were implanted, and when the wife still wanted to go through with the procedure, the IVF program refused to do so without the consent

of both former spouses. Id. The husband refused to consent, so the wife sued him in state court, asserting the divorce decree allowed her to unilaterally proceed with implantation. Id. The state court disagreed. Id. Dodson then sued the University of Arkansas for Medical Sciences in another attempt to allow her to implant the embryos, but she lost after the defendants successfully asserted sovereign immunity under state law. Id. at 753. Dodson then filed suit in federal court, alleging constitutional violations in a § 1983 action. Id.

The Eighth Circuit did not apply the Simes exception and affirmed the district court's dismissal under the Rooker-Feldman doctrine because "the state court discussed the merits of [plaintiff]'s case extensively and dismissed [the prior case] with prejudice." Id. at 755. The Eighth Circuit also emphasized how the relief plaintiff sought on constitutional grounds, which would require the return of the embryos to the plaintiff, "would wholly undermine" the state court's ruling that the contract governing the disposition of the embryos on divorce effectively relinquished plaintiff's "control and direction" over the embryos. Id. Here, multiple courts in multiple proceedings have extensively discussed Plaintiffs' claims regarding ownership of HRI before dismissing the cases with prejudice. See Healy I, Healy II, Mines, Fox, and Healy v. Fox, 46 F.4th 739. Granting the relief Plaintiffs seek on constitutional grounds, which is vacating prior court judgments and redetermining ownership of HRI, "would wholly undermine" the state court rulings that Bret Healy owns just one-third of HRI.

The fourth and final requirement for the Rooker-Feldman doctrine to apply—that the state court judgments were rendered before Plaintiffs initiated the present action—is also met. Judgment entered in Healy I on September 25, 2019; Healy II on August 3, 2022; and Mines on August 3, 2022. Plaintiffs did not file their Complaint and initiate this action until August 2, 2023. Doc. 1.

Accordingly, the Rooker-Feldman doctrine plainly applies to Claims 1 and 5 and prevents consideration of those federal causes of action.  This Court therefore lacks subject matter jurisdiction over the action and must dismiss it.

### C. Eleventh Amendment

Even if the Rooker-Feldman doctrine did not apply, this Court lacks subject matter jurisdiction over Defendant Supreme Court of South Dakota, as an entity, and over the Justices and Judge Sogn in their official capacities, under the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment limits federal jurisdiction, explaining federal jurisdiction does not "extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  This includes suits against the judiciary of a state.  See Denke v. S.D. Dep't of Soc. Servs., 829 F.2d 688, 689 (8th Cir. 1987) (recognizing the Eleventh Amendment bar suits "against the state or one of its agencies"); S.D. Const. art. II ("The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this Constitution."); S.D. Const. art. V, § 1 ("The judicial power of the state is vested in a unified judicial system consisting of a Supreme Court, circuit courts of general jurisdiction and courts of limited original jurisdiction as established by the Legislature.").  Suits against state actors, including judges, in their official capacities also constitute actions against the state which are barred by the Eleventh Amendment.  See Kruger v. Nebraska, 820 F.3d 295, 301 (8th Cir. 2016) ("[C]laims against state officials in their official capacities are really suits against the state." (citations omitted)).

### D. Judicial Immunity

Even if the <u>Rooker-Feldman</u> doctrine did not apply, this Court would have to dismiss the claims against the Justices and Judge Sogn in their individual capacities because such claims are barred by judicial immunity.[5] <u>See</u> <u>Sample v. City of Woodbury</u>, 836 F.3d 913, 916 (8th Cir. 2016) ("Where an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate" (citation omitted)); <u>Stump v. Sparkman</u>, 435 U.S. 349, 355–56, 362–63 (1978) (acknowledging a judge's "absolute immunity" when acting in his judicial capacity). Judicial immunity means a "judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances." <u>Schottel v. Young</u>, 687 F.3d 370, 373 (8th Cir. 2012). The two circumstances where judicial immunity does not apply are when the alleged actions are "not taken in the judge's judicial capacity" or were "taken in the complete absence of all jurisdiction." <u>Mireles v. Waco</u>, 502 U.S. 9, 11–12 (1991). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity," <u>Schottel</u>, 687 F.3d at 374 (citing <u>Birch v. Mazander</u>, 678 F.2d 754, 756 (8th Cir. 1982)), and immunity applies even if the "action [the judge] took was in error . . . or was in excess of his authority," <u>Mireles</u>, 502 U.S. at 13 (citation omitted).

Plaintiffs claim Judge Sogn and the Justices acted in ways that "did not sufficiently relate [to] the Supreme Court's authorized functions" and "took actions in the complete absence of all

---

[5] Although Judge Sogn and the Justices have not submitted a written motion to dismiss on the Amended Complaint, counsel for these Defendants argued dismissal was appropriate on the basis of judicial immunity at the motion hearing held on November 20, 2023. Judge Sogn and the Justices had not been named as defendants in the case prior to Plaintiffs amending the Complaint, the motion for which was granted at the hearing, so Defendants were timely in asserting the defense. <u>See</u> Fed. R. Civ. P. 12 (requiring a defendant to answer within 21 days of being served or allowing a defendant to assert a defense for failure to state a claim upon which relief can be granted by motion under Rule 12(b)(6) prior to filing an answer). Therefore, this Court addresses the argument here.

jurisdiction," Doc. 63 ¶¶ 352–53, but they have failed to allege any facts supporting such bold assertions. Plaintiffs' claims against Judge Sogn and the Justices is simply that they—in their appellate review of <u>Healy I</u>, <u>Healy II</u>, and <u>Mines</u>—made legal and factual errors so significant that the actions no longer "sufficiently related" to the functions of an appellate court. Plaintiffs specifically argue these Defendants found facts and weighed evidence. However, these actions, even if erroneous, were undoubtedly judicial acts "normally performed by a judge" in Plaintiffs' dealings with the "judge[s] in [their] judicial capacity." <u>Schottel</u>, 687 F.3d at 374 (citation omitted). Further, the Supreme Court of South Dakota has appellate jurisdiction over final judgments from circuit courts, meaning the judges, in adjudicating the matter, were not acting "in the complete absence of all jurisdiction." <u>See</u> S.D. Const. art. V, § 5 ("The Supreme Court shall have such appellate jurisdiction as may be provided by the Legislature, and the Supreme Court or any justice thereof may issue any original or remedial writ which shall then be heard and determined by that court."); SDCL 15-26A-3 ("Appeals to the Supreme Court from the circuit court may be taken as provided in this title from: (1) A judgment . . ."). The Plaintiffs were the parties invoking state appellate jurisdiction as the appellants in <u>Healy I</u> and <u>Mines</u> and cross-appellants in <u>Healy II</u>, making it a particularly ironic argument for the Plaintiffs to assert that the Justices and Judge Sogn sitting by designation acted "in the complete absence of all jurisdiction." Judicial immunity prevents Plaintiffs from suing Judge Sogn and the Justices in their individual capacities.

**E. Supplemental Jurisdiction**

Before a federal district court may exercise supplemental jurisdiction over state-law claims, there must be a claim over which the federal court has original jurisdiction. <u>See</u> 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district

courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."). In such circumstances, the court may then adjudicate the state-law claims or decline to exercise supplemental jurisdiction when the claims triggering original federal jurisdiction are dismissed. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction"); Aldridge v. City of St. Louis, 75 F.4th 895, 901 (8th Cir. 2023). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Aldridge, 75 F.4th at 901 (quoting Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009)). "District courts should consider such factors as 'the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims.'" Id. (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)). Other relevant factors include "judicial economy, convenience, fairness, and comity." Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

Here, there is no viable federal claim because Claims 1 and 5 are jurisdictionally barred by Rooker-Feldman and must be dismissed. Even if the Rooker-Feldman doctrine did not apply, Eleventh Amendment immunity and judicial immunity apply and require dismissal of Counts 1 and 5. This Court's jurisdiction over Counts 2, 3, and 4—notwithstanding Plaintiffs' argument to the contrary—depend on the existence of a federal claim in Counts 1 or 5. Because Plaintiffs have no viable federal claim, this Court cannot exercise supplemental jurisdiction over the remaining claims, Claims 2, 3, and 4. Further, even if this Court had the power to exercise supplemental jurisdiction over the remaining claims, it would decline to do so. There are currently three related

pending cases in Brule County filed by Plaintiff Bret Healy against some of these same defendants, so plainly there is an adequate state forum to adjudicate any of his state-law claims.

### F. Rule 12(b)(6) Motion to Dismiss under Res Judicata

Defendants Healys, Mineses, HRI, Osborne, and Fox also move to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the principle of res judicata bars Claims 2, 3, and 4.[6]  This Court ordinarily would not reach such issues when it dismisses for lack of federal jurisdiction.  But this Court must consider whether to impose sanctions against Plaintiffs, so it becomes necessary to consider all arguments barring Plaintiffs' claims in determining if the claims are in fact frivolous or presented for an improper purpose.  The concept of res judicata includes both claim preclusion and issue preclusion.  Taylor v. Sturgell, 553 U.S. 880, 892 (2008); see also Am. Fam. Ins. Grp. v. Robnik, 787 N.W.2d 768, 774 (S.D. 2010).  Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit[,]'" while "[i]ssue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."  Taylor, 553 U.S. at 892 (quoting New Hampshire v. Maine, 532 U.S. 742, 748–49 (2001)).  "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster

---

[6] Claims 1 and 5 do not apply to these Defendants, nor do Plaintiffs argue they do, because these Defendants are not state actors.  See Meier v. City of St. Louis, 78 F.4th 1052, 1058 (8th Cir. 2023) (stating "due process rights [under the Fourteenth Amendment] are protected only against infringement by state actors"); Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001) ("Only state actors can be held liable under Section 1983.").  Therefore, the res judicata analysis only addresses Claims 2, 3, and 4.

reliance on judicial action by minimizing the possibility of inconsistent decisions." Id. (cleaned up) (quoting Montana v. United States, 440 U.S. 147, 153–54 (1979)).

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  Therefore, this Court looks to South Dakota law to define the preclusive effect of the prior final judgments against Plaintiffs in Healy I, Healy II, and Mines.  See Hanig v. City of Winner, 527 F.3d 674, 676 (8th Cir. 2008) (stating that federal courts "must give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so. . . . [T]he issue we must decide turns on the South Dakota law of issue and claim preclusion." (internal citation omitted)).

While South Dakota law recognizes the difference between claim and issue preclusion, see Merchs. State Bank v. Light, 458 N.W.2d 792, 793–94 (S.D. 1990), it has applied the same four elements in both claim and issue preclusion cases:

> (1) the issue in the prior adjudication must be identical to the present issue, (2) there must have been a final judgment on the merits in the previous case, (3) the parties in the two actions must be the same or in privity, and (4) there must have been a full and fair opportunity to litigate the issues in the prior adjudication.

Dakota, Minn. & E. R.R. Corp. v. Acuity, 720 N.W.2d 655, 661 (S.D. 2006).  When applying the elements of res judicata, "a court should construe the doctrine liberally, unrestricted by technicalities.  However, because the doctrine bars any subsequent litigation, it should not be used to defeat the ends of justice." People ex rel. L.S., 721 N.W.2d 83, 90 (S.D. 2006).

"Res judicata applies only if the second action is brought on the same 'cause of action' as the first." Hicks v. O'Meara, 31 F.3d 744, 746 (8th Cir. 1994) (citation omitted).  "A cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce." Merchs. State Bank, 458 N.W.2d at 794.  South Dakota has often stated that the test to determine

whether a cause of action is the same is "whether the wrong sought to be redressed is the same in both actions." Hicks, 31 F.3d at 746; Nelson v. Hawkeye Sec. Ins. Co., 369 N.W.2d 379, 381 (S.D. 1985); Hanig, 527 F.3d at 676. "To make this determination, South Dakota law requires we look to the underlying facts which give rise to each cause of action." Hicks, 31 F.3d at 746; see also Frigaard v. Seffens, 599 N.W.2d 646, 648–49 (S.D. 1999) (stating "[t]he *same transaction* is again at issue involving precisely the same subject matter and parties" (emphasis added)); Bank of Hoven v. Rausch, 449 N.W.2d 263, 266–67 (S.D. 1989) (holding res judicata applied since the second claim "*arose out of the transaction or occurrence* that was the subject matter of the [other party's] claim" (emphasis added)). The Eighth Circuit has noted that South Dakota res judicata law uses language and analysis consistent with the "nucleus of operative fact" approach. Ruple v. City of Vermillion, 714 F.2d 860, 861–62 (8th Cir. 1983) ("It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata. . . . The Supreme Court of South Dakota has recently made clear that it adheres to the practical definition of 'cause of action' just discussed.").

Res judicata plainly bars the claims pleaded here because the state-law claims—Claims 2, 3, and 4—arise out of the same nucleus of facts where "the wrong sought to be redressed is the same" as in the prior state court case. In Healy I, Healy II, and the prior federal litigation, like in this case, "the wrong sought to be redressed" is Plaintiff Bret Healy's assertion to greater ownership in HRI and its assets, or in the case of Mines, HRP's claim to HRI assets. Plaintiffs attempt to argue the wrongs sought to be redressed in this case relate to "frauds, misrepresentations, misconduct and fraud upon the courts" occurring in the litigation of the prior cases, Doc. 34 at 4, but Plaintiffs' Prayer for relief requests this Court "[d]eclar[e] Bret Healy

owner of two-thirds of all the outstanding shares of HRI capital stock," Doc. 63 at 34, thereby undermining this argument. Indeed, Plaintiffs' Prayer in the Amended Complaint seeks to have this Court vacate all prior state and federal decisions and declare "Plaintiffs' future rights and remedies unaffected by" those decisions. Doc. 63 at 34. The first element of res judicata is met because the "fraud, misrepresentation and misconduct" claims arise out of the same nucleus of facts.

The second element of res judicata under South Dakota law is satisfied because the prior litigation resulted in a final judgment—or, more specifically, multiple final judgments—from courts of competent jurisdiction affecting Bret Healy's ownership in HRI. Plaintiffs argue that the state courts somehow lacked jurisdiction. But South Dakota state courts are courts of general jurisdiction, and the Supreme Court of South Dakota has jurisdiction over appeals in state court. See S.D. Const. art. V, § 5 ("The circuit courts have original jurisdiction in all cases"); SDCL 15-26A-3 ("Appeals to the Supreme Court from the circuit court may be taken as provided in this title from: (1) A judgment . . ."); Novak v. Novak, 741 N.W.2d 222, 228 (S.D. 2007) ("A grant of summary judgment on all issues is a final determination of the rights of the parties involved and is a final judgment pursuant to SDCL 15-6-54(a)."). The Supreme Court of South Dakota affirmed the final judgments in Healy I, Healy II, and Mines. And the Eighth Circuit affirmed this Court's dismissal of the prior federal case, Fox, as being barred by res judicata. Healy v. Fox, 46 F.4th at 746 ("[W]e conclude that all four factors required to apply res judicata are present here. . . . [W]e affirm the district court's dismissal of Bret's complaint.").

The third element of res judicata—that the parties are the same or in privity—is also met as to the Healys, Mineses, HRI, Osborne, and Fox. In determining who constitutes a party to an action for "the purpose of determining the conclusiveness of prior judgments, 'the courts look

beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment that may be rendered.'" JAS Enters., Inc. v. BBS Enters., Inc., 835 N.W.2d 117, 125 (S.D. 2013). Here, there is some variation as to which parties in this present case were parties to the prior cases litigating the issue of HRI ownership, but each Defendant claiming res judicata has litigated a matter in which preclusive effect can be applied to these claims by Bret and HRP. See Healy I (claims including those of Bret Healy against the Healys, Osborne, Fox, and HRI); Healy II (claims by HRP and Bret Healy against HRI); Mines (claims by HRP against the Mineses).

The fourth and final element for res judicata under South Dakota law is that the party against whom res judicata is being asserted had a full and fair opportunity to litigate the issues in the prior adjudication. Claim preclusion in South Dakota applies not only to "relitigation of issues previously heard and resolved; it also bars prosecution of claims that could have been raised in the earlier proceeding, even though not actually raised." Am. Fam. Ins. Grp., 787 N.W.2d at 775 (citation omitted). "When a party to litigation fails to develop all of the issues and evidence available in a case, the party is not justified in later trying the omitted issues or facts in a second action based on the same claim," id. (citation omitted), even if evidence is not discoverable during the litigation, Est. of Johnson ex rel. Johnson v. Weber, 898 N.W.2d 718, 733 (S.D. 2017) (citations omitted) (collecting and listing cases).

Plaintiffs had a prior opportunity to present Claims 2, 3, and 4. Notwithstanding Plaintiffs' arguments to the contrary, Plaintiffs knew of the alleged fraud right after the decision in Healy I, as they claim the "fraud" caused a misstatement in the Healy I opinion. Even if Plaintiffs' claims were factually true, Plaintiffs had multiple opportunities in the subsequent litigation, including in

the prior federal case, to have alleged the fraud Plaintiffs believe occurred in <u>Healy I</u>. They did not do so.

Plaintiffs did not challenge state court jurisdiction in any previous case, and for good reason given the obviousness of state jurisdiction and Plaintiffs having commenced the prior state cases of <u>Healy I</u> and <u>Mines</u>, and appealing the lower court decisions in <u>Healy I</u>, <u>Healy II</u>, and <u>Mines</u>. But now Plaintiffs claim a lack of state jurisdiction. The South Dakota circuit court rendering the initial judgment was a court of general jurisdiction, plainly making it able to hear the case. <u>Bingham Farms Tr. v. City of Belle Fourche</u>, 932 N.W.2d 916, 920 (S.D. 2019) ("South Dakota circuit courts are courts of general jurisdiction, and we have held that our Constitution confers broad authority upon circuit courts to 'hear all civil actions.'" (citations omitted)); <u>see also</u> S.D. Const. art. V, § 5 ("The circuit courts have original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the Legislature. The circuit courts and judges thereof have the power to issue, hear and determine all original and remedial writs.").

Further, the court in <u>Healy II</u> necessarily found <u>Healy I</u> had jurisdiction in the case because it determined res judicata barred Plaintiffs' claims, meaning Plaintiffs did, or could have, litigated their claims in <u>Healy I</u>. Likewise, in the prior federal case, Plaintiffs did not assert prior fraud on the state court in <u>Healy I</u> or lack of state court jurisdiction as they now do, despite having the same knowledge at the time of this proceeding that they did during the pendency of the prior federal case. Res judicata on several levels now bars the extraordinary relief Plaintiffs seek from this Court—reversal or vacating of the Eighth Circuit final decision from the prior litigation and reversal and vacating of three final decisions of the Supreme Court of South Dakota.

III.    **Motions for Sanctions**

Federal Rule of Civil Procedure 11(b) governs a party's representations to the court and, in the case of noncompliance with the rule, the imposition of sanctions. Rule 11 outlines a party's obligations as follows:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). This Rule requires "a reasonable inquiry of the factual and legal basis for a claim before filing." Miller v. Bittner, 985 F.2d 935, 938 (8th Cir. 1993) (citation omitted). There has been reasonable inquiry where the prefiling investigation uncovers both a factual and legal basis for the plaintiff's allegations. Vallejo v. Amgen, Inc., 903 F.3d 733, 747 (8th Cir. 2018) (citation omitted). "The District Court must determine whether a reasonable and competent attorney would believe in the merit of an argument" in deciding whether a party has violated Rule 11. Id. (quoting Coonts v. Potts, 316 F.3d 745, 753 (8th Cir. 2003).

This Court also has an "inherent power" to impose sanctions for a party's bad faith conduct. See Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991). "A court may impose sanctions under Rule 11 even where it lacks subject matter jurisdiction." Strobel v. Burgess, 4:19-CV-04073-KES, 2020 WL 528229, at *2 (D.S.D. Feb. 3, 2020) (citing Willy v. Coastal Corp., 503 U.S. 131, 136–37 (1992). In addition, 28 U.S.C. § 1927 states that anyone "admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

In <u>Healy I</u>, both the lower court and Supreme Court of South Dakota on appeal imposed sanctions in the form of attorneys fees on Plaintiff Bret Healy because "there is no evidence in the record to suggest that Bret had any reasonable basis to believe his claims were valid when he filed the lawsuit or that they could survive the statute of limitations defense." <u>Healy I</u>, 934 N.W.2d at 567. The Supreme Court continued: "Bret filed the lawsuit for the purposes of preventing sale of the property, not because he believed his partnership interest remained enforceable." <u>Id.</u> Bret's motives in filing this suit against many of the same parties he sued in <u>Healy I</u> are similar. The number of obvious obstacles to the claims—the <u>Rooker-Feldman</u> doctrine, Eleventh Amendment and judicial immunity, lack of supplemental jurisdiction, and res judicata—render the claims generally to lack valid legal basis. Although Bret Healy's counsel at the hearing provided zealous representation, the arguments made about why the <u>Rooker-Feldman</u> doctrine or judicial immunity did not apply or how res judicata does not bar the state-law claims were not warranted by existing law or a good faith, nonfrivolous argument for some modification or extension of existing law. The history of litigation combined with the absence of merit of the claims justify an award of attorneys fees to the non-state defendants as sanctions under Fed. R. Civ. P. 11(b)(1) and (2).

## IV.   Conclusion

For the reasons explained, it is therefore

ORDERED that the Defendants' motions to dismiss, Docs. 17, 19, 23, and 27, are granted. It is further

ORDERED that the motions for sanctions, Docs. 29, 30, and 31, are granted. It is further

ORDERED that the attorneys representing the parties who sought sanctions file within 21 days of this order affidavits setting forth what reasonable attorneys fees and costs were incurred exclusively related to defending this lawsuit.  It is finally

ORDERED that once this Court determines the amount of sanctions to impose, this case will be dismissed.

DATED this _14th_ day of December, 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE